[No. 19146. Department One. November 5, 1925.]

THE STATE OF WASHINGTON, *Appellant*, v. CECIL
NATSUHARA, *et al., Respondents.*[1]

ALIENS (3)—REAL PROPERTY—CONSTITUTIONAL AND STATUTORY
RESTRICTIONS—RIGHT TO LEASE LAND. Constitution, Art. 2, § 33,
prohibiting alien ownership of lands except for certain purposes,
having made no mention of leases, does not prohibit a lease to
aliens for a reasonable length of time.

COURTS (36)—PREVIOUS DECISIONS AS CONTROLLING—RULES OF
PROPERTY—STARE DECISIS. The rule of *stare decisis* is peculiarly
applicable where the supreme court early expressed the view that
the constitution did not prohibit a lease of lands to aliens for a
reasonable length of time, and it was generally understood thereafter
that such was the law.

ALIENS (3)—REAL PROPERTY—CONSTITUTIONAL AND STATUTORY
RESTRICTIONS—LEASES. Rem. Comp. Stat., § 10582, providing that
"an alien shall not own land," and that lands held at the time of the
passage of the act "by or for aliens in violation of the constitution"
or "conveyed to or for the use of an alien in violation of the con-
stitution or this act," shall be forfeited to the state, does not apply
to existing leases valid under the constitution at the time of
the passage of the act; since to so construe it would impair rights
and throw doubt upon its constitutionality.

STATUTES (85)—CONSTRUCTION—RETROACTIVE OPERATION—STATUTES
IMPAIRING VESTED RIGHTS. CONSTITUTIONAL LAW (51)—POLICE
POWER—DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW—
RIGHTS OF ALIENS. The legislative exercise of the police power
cannot justify the passage of an act taking the property of aliens
without compensation, alien inhabitants being entitled to the pro-
tection of our laws.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered January 5, 1925,
dismissing an action by the state to escheat lands of
an alien, upon sustaining a demurrer to the complaint.
Affirmed.

*Ewing D. Colvin,* for appellant.
*Guie & Halverstadt,* for respondents.

[1]Reported in 240 Pac. 557.

MAIN, J.—By this action, the state sought to escheat a leasehold interest in real estate owned by an alien. To the complaint, a demurrer was interposed and sustained. The plaintiff elected to stand upon the complaint and refused to plead further. A judgment was entered dismissing the action, and the state appeals.

On the 17th day of August, 1916, one Joseph Kraus, being the owner of six and one-half acres of land, by written contract leased it to the respondents for a period of ten years. The lease provided that the greater portion of the land covered thereby should be devoted to the raising of berries and asparagus. The rent was one hundred and twenty dollars per year. The respondents went into possession, and occupied under the lease up to and including the time when the action was brought. The lease, by its terms, expires on the last day of December, 1926.

At the 1921 legislative session, a law was passed which, among other things, prohibited the leasing of land in this state to aliens. Laws of 1921, ch. 50, p. 156. [Rem. Comp. Stat., § 10581.] It was after this act took effect that the present action was begun. By this proceeding, the attempt is made to escheat the leasehold interest of the respondents, on the ground that they are aliens, being subjects of the Emperor of Japan. The general question is whether the act of 1921 applies to leases which were in existence at the time it became effective. Under this general question, the first particular question to be determined is whether, prior to that act, a lease of real estate to an alien for a reasonable length of time was valid. There is no claim in this case that the term of the lease involved was for an unreasonable length of time. In determining this question, it is necessary to ascertain the meaning of § 33, art. 2 of the state constitution, which provides:

"The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of the United States, is prohibited in this state, except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void: Provided, that the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom. Every corporation, the majority of the capital stock of which is owned by aliens, shall be considered an alien for the purpose of this prohibition."

It will be observed that, by the constitution, the right of aliens to own real estate in certain respects is secured, and in other respects prohibited. No mention is made of leasehold interests. The constitution, therefore, does not prohibit the leasing of land to aliens for a reasonable length of time. *Terrace v. Thompson,* 274 Fed. 841; *Terrace v. Thompson,* 263 U. S. 197.

Construing the constitutional provision above quoted, in *State ex rel. Winston v. Morrison,* 18 Wash. 664, 52 Pac. 228, it was held that a lease for ninety-nine years was prohibited, because such a lease was for an unreasonable term and came within the meaning and spirit of the constitutional prohibition against alien ownership. It was there plainly recognized—and the court had before it the question as to whether leasehold interests were valid—that a lease to an alien for a reasonable length of time was valid. It was there said:

"After a vain search for authority bearing directly upon the question, we have concluded that a lease of

lands in this state to an alien for a reasonable term might be upheld, but that the lease in question is for an unreasonable term, and consequently void.''

In *State ex rel. Winston v. Hudson Land Co.,* 19 Wash. 85, 52 Pac. 574, 40 L. R. A. 430, a lease for forty-nine years was held void, under the doctrine announced in the *Morrison* case. Both of those cases undoubtedly recognized that a lease for a reasonable length of time would be valid. It is probably correct to say that, since those decisions were rendered, it has been the understanding of the bench and bar of this state that leases to aliens for a reasonable length of time were not under the constitutional ban. Undoubtedly, many such contracts have been made and valuable rights acquired thereunder.

The appellant argues that the question was not directly before the court in either of those cases, and therefore they cannot be deemed controlling. We think the court there deliberately expressed its view that, if the lease was for a reasonable length of time, it would be valid. That view having been expressed and it having been generally understood that such was the law, we think it should be adhered to, under the rule of *stare decisis.* In *In re Fifth Avenue, etc.,* 62 Wash. 218, 113 Pac. 762, it was said:

''The rule of *stare decisis* is peculiarly applicable to the construction of the constitution. The interpretation of that document should not be made dependent upon every change in the personnel of the court. When one of its clauses has been once construed, that construction should not be set aside except for the most cogent reasons. Certainty in the law is of the first importance.''

What the common law of England with reference to the right of an alien to lease real estate may have been, and whether that law has ever been adopted in this

country, need not be here determined. As stated, the two decisions above referred to seem to us to have settled the question so far as this state may be concerned.

The lease here involved being valid when made, the question arises whether the act of 1921 intended to operate against such interests. By subd. (b), § 1 (Laws of 1921, p. 156; Rem. Comp. Stat., § 10581), the word "land" is defined to mean, among other things, leasehold interest. Section 2 of that act provides:

"An alien shall not own land or take or hold title thereto. No person shall take or hold land or title to land for an alien. Land now held by or for aliens in violation of the constitution of the state is forfeited to and declared to be the property of the state. Land hereafter conveyed to or for the use of aliens in violation of the constitution or of this act shall thereby be forfeited to and become the property of the state." Laws of 1921, p. 157, § 2; Rem. Comp. Stat., § 10582.

If the act is to be construed so as to apply to valid leasehold interests at the time it became effective, it must be by reason of the words, "an alien shall not own land," in the first sentence thereof. In the third sentence, it is provided that land held at the time of its passage "by or for aliens in violation of the constitution is forfeited to and declared to be the property of the state." In the last sentence, it is provided that land conveyed to or for the use of an alien in violation of the constitution or of this act, "shall be forfeited to and become the property of the state." In the first sentence where the words "an alien shall not own land" appear, there is no provision for forfeiture, as in the other two sentences mentioned. It seems clear that the legislature did not intend that the act should apply to valid leases prior made, or it would have

expressly so provided. Even though the language may be doubtful, it should receive such a construction as will not impair existing rights, and we should not give it a construction which would impair such rights where it does not clearly appear that such was the legislative intention. In *In re Heilbron's Estate,* 14 Wash. 536, 45 Pac. 153, 35 L. R. A. 602, it was said:

"To construe the statute, therefore, as retroactive would require us to hold that it impaired existing rights and we ought not to incline to such a construction where it does not clearly appear that such was the legislative intention. Retroactive statutes are generally regarded with disfavor and we think that the act under consideration must be construed as prospective only.

"In Sutherland on Statutory Construction, § 464, the learned author says:

"'A statute should not receive such construction as to make it impair existing rights, create new obligations, impose new duties in respect of past transactions, unless such plainly appear to be the intention of the legislature. In the absence of such plain expression of design, it should be construed as prospective only, although *its words are broad enough in their literal extent to comprehend existing cases.*'"

There is another reason why the construction contended for by the state should not be given, if the act is reasonably susceptible of being construed as not to apply to prior valid leases. If it should be given a construction as applying to such leases, its constitutionality in this regard would be a grave question. It would mean that property lawfully acquired might, by act of the legislature subsequently passed, be taken from the lawful owner and given to the state without compensation.

It is argued that, since this act was passed by the legislature in the exercise of the police power, this may be done. We know of no authority which so holds.

There are cases which hold that nuisances may be abated, and other cases where property has been greatly depreciated by reason of the passage of a law by the legislature in the exercise of the police power; but no case has gone so far as holding that valuable property may be taken from the individual and given to the state. The effect of a law being to depreciate the value of the property by depriving the owner of devoting it to a particular use is a very different thing from taking valuable property legally acquired and giving it to the state without compensation to the owner. To so hold would not only be unjust in law but wrong in morals. The distinction between the depreciation of the value of property in the hands of the owner by reason of the passage of a law, and the taking of the property outright, is distinctly recognized in the case of *Mugler v. Kansas,* 123 U. S. 623, where it is said:

"A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. Such legislation does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the State that its use by any one, for certain forbidden purposes, is prejudicial to the public interests. Nor can legislation of that character come within the Fourteenth Amendment, in any case, unless it is apparent that its real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his liberty and property, without due process of law. The power which the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not—and, consistently with the existence and

safety of organized society, cannot be—burdened with the condition that the State must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner.''

The alien inhabitants of the state, as well as all other persons within its jurisdiction, are entitled to the protection of its laws. *Yick Wo v. Hopkins,* 118 U. S. 356; *Truax v. Raich,* 239 U. S. 33; *Terrace v. Thompson, supra.*

We, therefore, conclude that the act of 1921 does not, and was not intended to, apply to valid leases entered into in good faith prior to its enactment.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, and ASKREN, JJ., concur.