[No. 23792. Department One. November 2, 1932.]

McCormacks, Inc., *Appellant,* v. The City of Tacoma
*et al., Respondents,* John S. Baker Investment
Company, *Appellant.*[1]

[1]Reported in 15 P. (2d) 688.

*John E. Belcher* and *Teats & Teats,* for appellants.

*W. W. Mount, John E. Gallagher,* and *Bartlett Rummel,* for respondents.

HERMAN, J.—The defendant city of Tacoma, a municipal corporation, is the owner and operator of both an electric light and power plant and a water system. In 1916, McCormack Bros. Co., a corporation, filed written application to be furnished with water and electricity for the premises occuped by it in Tacoma. John S. Baker Investment Co., a corporation, the intervener herein, was then and still is the owner of those premises. Electricity and water were furnished continuously by the city of Tacoma from 1916 until McCormack Bros. Co. was adjudged insolvent, and a receiver was appointed to wind up its affairs.

The city filed a preferred claim in the receivership for charges due from McCormack Bros. Co. in the sum of $2,059.53 for both electricity and water. The receiver refused to classify the city's claim as a preferred claim, but did allow it as a general claim. In the course of the receivership, the remaining merchandise of the insolvent corporation was, with the approval of the court, sold to Wayne Keyes for a sum sufficient to pay all general creditors twenty per cent of the amount of their claims.

For a valuable consideration, Mr. Keyes transferred the merchandise he purchased from the receiver to McCormacks, Inc., a corporation, the plaintiff in this suit. McCormacks, Inc., immediately went into possession of the premises, and made application to the city for a continuance of service of electricity and water. The city refused the applicant the right to sign a contract for such service until the full amount of the city's

claim against McCormack Bros. Co. was paid. This, plaintiff refused to pay, and the city threatened to discontinue the service.

Plaintiff filed suit for an injunction, and a temporary restraining order was issued, together with an order directed to defendants to show cause why the restraining order should not be made permanent, and the court was asked to determine in this proceeding the status of the city's claim. John S. Baker Investment Co., a corporation, the owner of the premises, intervened, and the matter came on for hearing. The court entered judgment denying the injunction, dissolving the temporary injunction and dismissing the action, with costs against plaintiff and intervener, holding that service to the premises need not be furnished until the city's claim in full was paid. From that judgment, plaintiff and intervener have appealed.

Appellants' assignments of error are: (1) The court erred in denying a permanent injunction; (2) the court erred in dissolving the temporary injunction; (3) the court erred in dismissing the action.

A number of reasons why the action of the trial court was erroneous are urged by appellants. We will consider the first three of these reasons in the order of their presentation by appellants.

Appellants contend that the city of Tacoma, in so far as the ownership and operation of its electric and water plants are concerned, is a public service corporation, and must serve all who apply and are willing to comply with its reasonable rules and regulations. In this connection, there have been called to our attention those sections of the statutes and ordinances hereafter set forth. Authority for respondent city to conduct its operations is granted by the following sections:

Rem. Comp. Stat., § 8966, provides as follows:

"Any such city shall have power . . .

"(14) To provide for erecting, purchasing, or otherwise acquiring waterworks, within or without the corporate limits of said city, to supply said city and its inhabitants with water, or to authorize the construction of same by others when deemed for the best interests of such city and its inhabitants, and to regulate and control the use and price of the water so supplied;

"(15) To provide for lighting the streets and all public places, and for furnishing the inhabitants thereof with gas or other lights, and to erect, or otherwise acquire, and to maintain the same, or to authorize the erection and maintenance of such works as may be necessary and convenient therefor, and to regulate and control the use thereof."

Rem. Comp. Stat., § 9488, provides:

"Any incorporated city or town within the state be, and hereby is, authorized to construct, condemn and purchase, purchase, acquire, add to, maintain, conduct and operate waterworks, within or without its limits, for the purpose of furnishing such city or town and the inhabitants thereof, and any other persons, with an ample supply of water for all uses and purposes, public and private, including water power and other power derived therefrom, with full power to regulate and control the use, distribution and price thereof; . . . to construct, condemn and purchase, purchase, acquire, add to, maintain and operate works, plants and facilities for the purpose of furnishing such city or town and the inhabitants thereof, and any other persons, with gas, electricity and other means of power and facilities for lighting, heating, fuel and power purposes, public and private, with full authority to regulate and control the use, distribution and price thereof, . . ."

The charter of respondent city of Tacoma, § 3, contains the following provisions:

"The city shall have power to construct, condemn and purchase, purchase, acquire, add to, maintain, con-

duct and operate waterworks within or without its limits, for the purpose of furnishing the city and the inhabitants thereof, and any other persons, with an ample supply of water for all uses and purposes, public and private, including water power and other power derived therefrom, with full power to control the use, disposition, and price thereof; . . . to construct, condemn and purchase, purchase, acquire, add to, maintain and operate works, plants and facilities for the purpose of furnishing the city and the inhabitants thereof, or any other person, with electricity and other means of power and facilities for lighting, heating, fuel and power purposes, public and private, with full authority to regulate and control the use, distribution and price thereof," etc.

Rem. Comp. Stat., § 10454, stipulates:

"Nothing in this act [the public service commission law] shall authorize the commission to make or enforce any order affecting rates, tolls, rentals, contracts or charges or service rendered, or the safety, adequacy or sufficiency of the facilities, equipment, instrumentalities or buildings, or the reasonableness of rules or regulations made, furnished, used, supplied or in force affecting any . . . electrical plant or water system owned and operated by any city or town. . . ."

From the foregoing, it appears that respondent city of Tacoma has the power to conduct in a reasonable manner its light and water business, under authority of the statute and its charter, and that it can adopt rules and regulations and control the price and distribution of its services without any interference from the public service commission.

Appellants next contend that the statute seeking to give a lien to the city is unconstitutional. The statute giving cities a lien was passed March 17, 1909. It is found in Laws of 1909, page 617, chapter 161 (Rem. Comp. Stat., §§ 9471, 9472), and, with the title, reads as follows:

"An Act granting to cities owning their own water-works, electric light or power plants a lien for delinquent charges, and providing for the enforcement thereof.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Section 1. That cities owning their own water-works, electric light or power plants, are hereby granted a lien for delinquent and unpaid charges for water or electric light or power, against the premises to which the same has been furnished.

"Sec. 2. Said lien may be enforced by cities only by cutting off water or electric light or power against the premises to which the same has been furnished, after the charges become delinquent and unpaid, until such charges are paid. In the event of a disputed account, and tender by the owner of the premises of the amount claimed by him to be due prior to the city discontinuing such a service, the right to so refuse service to any premises shall not accrue until suit has been entered by the city, and judgment entered in such case."

Section 12, article I, of the state constitution, cited by appellants in support of their contention that the foregoing statute is unconstitutional, declares:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

There is nothing about the foregoing section of the constitution to indicate that it can make any difference, when the legislature grants special privileges or immunities to a municipal corporation, whether they are given to the municipal corporation in its governmental or private capacity. We must hold that the statute in question is not unconstitutional.

Appellants' third contention is that, if the statute granting the city a lien is not unconstitutional,

respondent city has waived its right of lien as to the owner of the property. They call attention to those sections of ordinance No. 9070 of the city of Tacoma immediately hereafter set forth:

"Section 6. . . . The applicant may also be required either to make a deposit in cash with the treasurer, or to furnish him a surety bond to secure the payment of current bills at the option of the department. No deposit of cash to be less than two months estimated bills, minimum not to be less than $3.00. Money so deposited shall be applied upon amounts due after the same shall become delinquent.

. . . . . . . . . . . . .

"Section 16. It shall be the duty of the commissioner to keep accounts with all customers for electric current and to enter on such accounts all charges and penalties. The commissioner shall render a bill to each customer monthly for electric current consumed during the preceding thirty days, and said bill shall become due and payable at the office of the city treasurer or other place or places designated by him within ten days after the rendering of the same, notice of which fact shall appear on the bills rendered.

"If said bills are not paid when due they shall become delinquent and the commissioner shall, if in his judgment the same is necessary to enforce payment of said bills, cause a cut-off of the service from the premises affected by such delinquency, and a fee of fifty cents shall be charged for re-connecting after such cut-off. . . .

"The commissioner may require a cash deposit or satisfactory security to be given to the treasurer by any consumer to insure payment for electric current to be furnished, and if cash deposit be not made or such security furnished as required, the current shall be cut off from the premises of such consumer, and shall not be again turned on until such payment is made or security furnished, together with the payment of a fee of fifty cents for the service performed in turning on such current." (As amended by Ordinance 10454.)

Appellants argue that, where the city has not exercised its option, and has not required the deposit of two months' estimated bills, especially after there were delinquent bills for one or more months, it would be estopped from claiming from the owner of the building the charges for practically a year's service.

The Minnesota supreme court, in the case of *East Grand Forks v. Luck,* 97 Minn. 373, 107 N. W. 393, 6 L. R. A. (N. S.) 198, holds, in effect, that a statute which makes an owner of premises liable for water and light furnished by a municipality to a tenant is not unconstitutional in that it results in the taking of property without due process of law, or in causing one person to pay for the debts of another. The court held the obligation assumed by an owner who connects his premises with the city system for the purpose of acquiring light or water is to maintain and pay for the same in accordance with the prescribed rules and regulations, upon the theory of implied contract. The opinion of the court, in part, says:

"Such provision does not, in our judgment, provide that a person shall pay the debts of another, and thus take his property without due process of law. The theory of the charter is that the obligation on the part of the owner rests upon contract, which is implied by the fact that he connects his premises with the city water or electric-light system, and permits the occupant to use the same. It is quite as reasonable to require the owner of the premises to respond personally for the debts incurred by his lessee for electric light and water rent as to subject his premises to a lien and sale. If the method adopted is reasonable, and the owner has ample notice thereof, he then subjects himself to the regulations if he concludes to become a consumer. He has no absolute right to call upon the city for water without regard to suitable terms controlling its use, and the city has the undoubted authority to prescribe what those terms shall be, subject

only to the rule that they must be reasonable and not prohibitory.''

27 R. C. L., § 72, page 1456, states:

''In some jurisdictions, under statute, municipalities furnishing water to their inhabitants are authorized to shut off the supply for non-payment of the water rentals, and to keep it shut off until the sum due therefor has been paid; and under such authority it has been held that the municipality may turn off the supply notwithstanding the fact that, since the delinquency, the premises have been occupied by another tenant. Likewise, a city authorized by statute to shut off water from buildings whose occupants refuse to pay water rent, and keep it shut off until the rent is paid, cannot be compelled to supply water to premises purchased from one against whom the city had a claim for water supplied to the premises prior to the purchase.''

In our opinion, the foregoing quotation constitutes a correct statement of the law. The ordinance giving the officer of the city of Tacoma power to cause a shut-off of water from premises affected, and to keep it shut off until the sum due therefor has been paid, if, in his opinion, such a course of conduct is necessary to collect the amount due the city, is a reasonable provision. The remedy runs against the premises served, as well as against the tenant using the water. The judgment of the trial court was correct.

Affirmed.

Parker, Mitchell, and Steinert, JJ., concur.

Tolman, C. J., dissents.