[No. 25226.   Department Two.   December 5, 1934.]

METROPOLITAN LIFE INSURANCE COMPANY, *Respondent,*
v. WM. H. HANSEN *et al., Defendants,* THE CITY
OF TACOMA, *Appellant.*[1]

[1]Reported in 38 P. (2d) 387.

*Howard Carothers, Hilton B. Gardner,* and *Bartlett Rummel,* for appellant.

*Hayden, Metzger & Blair,* for respondent.

Steinert, J.—This is an action to foreclose a mortgage upon real estate, and also to foreclose the right asserted by the city of Tacoma to refuse to furnish further water and light service to the premises. The defendant mortgagors defaulted. A demurrer to the city's answer having been sustained, the city declined to plead further. Findings and conclusions were subsequently made, based upon which a decree granting the relief prayed for was entered. The city of Tacoma has appealed.

The facts necessary to be considered are these: Incorporated cities and towns of this state are authorized to construct, condemn, acquire and maintain waterworks and lighting plants for the purpose of supplying water and light to their inhabitants, with full power to regulate and control the reasonable use, distribution and price of such water and light. Rem. Rev. Stat., § 8966 [P. C. § 678], and Rem. 1934 Sup., § 9488 [P. C. § 1214]. The rates, tolls and charges made by cities and towns owning such public utilities and the reasonableness of their rules and regulations in connection therewith may not be interfered with by the public service commission. Rem. Rev. Stat., § 10454 [P. C. § 5632]. Pursuant to the authority thus given by the statute, the city of Tacoma became the owner of a water system and also of a lighting system.

In 1909, the legislature passed an act giving cities owning their own waterworks, electric light or power plants a lien for delinquent and unpaid charges for water, electric light or power, against the premises to which such service has been furnished. The act

further provides that such lien mày be enforced *only* by cutting off the water, electric light or power from the premises until such charges are paid. Rem. Rev. Stat., §§ 9471, 9472 [P. C. § 1226]. Pursuant to the authority of that act, the Tacoma city council passed ordinances Nos. 7038 and 9070 relating to the use of water and light, fixing rates providing methods for collection of charges, and authorizing its officers to cut off service for delinquencies and to withhold further service until such delinquent charges are paid.

In 1933, the legislature amended § 9471, *supra* [Rem. 1934 Sup., § 9471 (P. C. § 1225)] by adding thereto two provisos. Under the first proviso, the owner of the premises, or the owner of a delinquent mortgage thereon, may give written notice to the head of such utility to cut off the service from the premises, and from and after the giving of such notice and the payment or tender of the then delinquent and unpaid charges plus the cut-off charge, the city shall have no lien against the premises for any charges for such service thereafter furnished, nor shall the owner of the property, or the owner of a delinquent mortgage thereon, be held for the payment thereof. Under the second proviso of the amending act, "such liens shall not be for more than four months' charges due or to become due, nor for any charges which have been due for more than four months." Chap. 135, Laws of 1933, p. 473.

On February 10, 1927, the owners of the premises here involved executed a mortgage covering the real estate, together with the improvements thereon. That mortgage is now owned and held by respondent. Prior to the execution of the mortgage, however, the city had begun to furnish water and light to the premises, which service it continued until the early part of July, 1933. Charges for water service becoming delinquent and

being unpaid in the sum of $20.45, the city shut off the water on July 5, 1933. Charges for light service becoming delinquent and unpaid in the sum of $26.42 plus 64c Federal tax, the city cut off the light on July 11, 1933. Both charges were for service rendered subsequent to the execution of the mortgage. The present action was instituted December 28, 1933.

The question presented by this appeal is this: May the city's statutory right to cut off water and light service from premises, for delinquent charges, until such charges are paid, be foreclosed and barred in an action brought to foreclose a mortgage on the real estate, executed *after* the city has begun to supply the water and light thereto, but *before* the rendition of the particular service for which the charges have become delinquent?

In *McCormacks, Inc. v. Tacoma*, 170 Wash. 103, 15 P. (2d) 688, it was held that, under Rem. Rev. Stat., §§ 8966, 9488 and 10454, the city of Tacoma had the power to conduct, in a reasonable manner, its light and water business, and that it could adopt rules and regulations for, and control the price and distribution of, its service without interference from the public service commission. After holding that the act of 1909 (Rem. Rev. Stat., §§ 9471 and 9472, *supra)* was not unconstitutional, the opinion, proceeding upon quotation of authority, further holds that the provision of the ordinance giving the city officers the power to shut off the service from the premises affected, and to keep it shut off until the sums due therefor are paid, if, in the opinion of such officers, such a course of conduct is necessary to collect the amount due, was a reasonable provision.

The sweeping significance and effect of that decision will be recognized when we recall the fact, as disclosed in the opinion, that the delinquent charges there

amounted to over two thousand dollars, and that the decree provided that the city was not required to furnish such service to a subsequent owner of the premises until the city's claim had been paid in full. Manifestly, the effect of that decision is to compel one person to pay for service which has been supplied to another.

Harsh as this result may at first appear, it nevertheless is the product of a rule adopted not only in this state, but generally throughout the union. *Girard Life Ins. Co. v. Philadelphia,* 88 Pa. 393; *Appeal of Brumm,* 9 Sad. 483 (Pa.) 12 Atl. 855; *Kohler v. Reitz,* 46 Pa. Superior Ct. 350; *Rochester Bldg. & Loan Ass'n v. Beaver Valley Water Co.,* 68 Pa. Super. Ct. 122; *Atlanta v. Burton,* 90 Ga. 486, 16 S. E. 214; *East Grand Forks v. Luck,* 97 Minn. 373, 107 N. W. 393, 6 L. R. A. (N. S.) 198; *State ex rel. Scotillo v. Water Supply Co. etc.,* 19 N. Mex. 27, 140 Pac. 1056; *Loring v. Commissioner of Public Works,* 264 Mass. 460, 163 N. E. 82; *Provident Institution, etc. v. Jersey City,* 113 U. S. 506, 5 S. Ct. 612, 28 L. Ed. 1102; *Dunbar v. New York,* 251 U. S. 516, 40 S. Ct. 250, 64 L. Ed. 384. In the Minnesota case just cited, it was held that a statute fixing *personal* liability for the charges upon the owner of the premises was constitutional, and in several others of the cases it was held that a statute establishing a lien directly against the *premises* was likewise constitutional. Neither of these latter questions, however, is involved in this case.

To mitigate the harshness of the rule laid down in the *McCormacks'* case, the legislature passed the amending act of 1933, which gave the owner of the premises, or the owner of a delinquent mortgage thereon, the right, by written notice, to cut off the service, and which also limited the city's lien to four months' delinquent charges. In so far as the extent of the

charges and the time limit of the lien are concerned, the 1933 amendment has no restrictive application to the present case, for it is conceded that no notice to discontinue the service was ever given by the respondent, and further, that the delinquent charges are within the four months' period.

This brings us to the consideration of the principal question in dispute here. Respondent's contention, upon which it rests its case, is that its lien is a contract lien prior in time to the "statutory lien" of the city, and that, therefore, its lien is prior in right. Specifically, respondent contends: (1) That inasmuch as Rem. Rev. Stat., § 9471, merely granted a lien, but did not by its terms make it a prior lien, therefore, when municipal services are rendered to the premises subsequent to the execution of a mortgage on the property, the mortgage lien must have priority and preference; and (2) that the 1933 amendment did not, either expressly or impliedly, give the city a superior lien for water and light charges, but, if it did, the act would be unconstitutional because it would violate respondent's rights under its contract. The city, on the other hand, contends that respondent has no lien whatever superior to its rights under the statute.

The solution of the problem before us will be aided somewhat, we think, if we first ascertain and determine just what the nature of the city's so-called "statutory lien" really is. Much of the perplexity inherent in the problem and much of the disagreement between counsel as to the effect of the statute will disappear if the contexture of the city's "lien" be examined and resolved.

In *Lanterman v. Nestor,* 146 Wash. 37, 261 Pac. 800, it was held that the lien for water rent under Rem. Rev. Stat., § 9471, constituted an "encumbrance" within a warranty contained in a bill of sale covering

a leasehold interest in certain premises. However, when §§ 9471 and 9472 of the statute are read together and in their entirety, it becomes obvious that the city is not given any *lien* at all, in the technical or usual sense of that term. The property served by the city is not liable for the charge, nor is the property to be regarded as security for the payment of the city's claim. What the statute has granted to the city is a definite, positive and unqualified *right* to shut off its service from the premises until the delinquent charges are paid. It is a right that is coincident with the city's right to operate its water, light and power plants. This right is not in a class with tax liens, assessment liens, judgment liens, mortgage liens or mechanics' liens, which operate upon the property directly and are satisfied therefrom. The city can not, by any form of procedure, collect its charges from a forced sale of the property itself, and, in fact, the city is not seeking here to fasten upon the property any lien whatever.

The statute, though somewhat dubious in expression, in effect seeks to, and does, prescribe a practical remedy and method, effective, inexorable and direct, for the collection of delinquent charges. The wisdom or policy of granting the right to invoke such remedy or method lies with the legislature, and is a matter with which the courts have nothing to do, unless it can be said that the provisions of the statute are unreasonable. The reasonableness of such provisions, however, has already been upheld by this court in *McCormacks, Inc. v. Tacoma, supra.* The legislature has since seen fit to modify its *future* policy, and to mollify the rigor of its former rule. It has limited the extent to which the city may go in the future, in the exercise of its right, but it has not wholly deprived the city of the right originally conferred upon it. The city may still

shut off the supply until its charges, for a limited period at least, are paid. We are not here concerned with the limitation prescribed by the amendatory act, but rather with the positive right conferred upon the city by the original act of 1909.

The nature of the city's lien, or rather *right,* being thus understood, and the reasonableness of the provision giving such right having been previously sanctioned by this court, we are led to the conclusion, and hold, that the mortgagee's lien is inferior to the previously granted right of the city to cut off the water supply from the premises for delinquent charges, until such charges are paid, even though the mortgage antedates the rendition of the particular service for which the charges are delinquent.

The same conclusion may be reached if we approach the matter from a little different angle. It will be borne in mind that Rem. Rev. Stat., §§ 9471 and 9472, were passed in 1909, long before the execution of respondent's mortgage. It will also be borne in mind that the city began to supply its service long before the mortgage was executed. The mortgagee was charged with knowledge of the statute which gave the city the summary right to discontinue its service. Respondent took its mortgage charged with that knowledge. In fact, the mortgage, by its terms, provided that, upon default of the mortgagor in the payment of any water rate, municipal light or heat rate, etc., the mortgagee might apply for, and would, as a matter of right, be entitled to, the appointment of a receiver to take over the rents of the premises.

Whether or not the assent of the mortgagee would add anything to the force and effect of the statute, it must at any rate be considered here that respondent, by taking its mortgage with knowledge of the law, thereby assented to the terms and provisions of

the statute. Several of the cases already cited above deal with this principle, and announce the rule of implied assent. It is unnecessary to take the time or space to quote from those decisions, because the principle seems wholly logical and incontrovertible.

Even respondent recognizes the doctrine of implied assent, but says that the doctrine has nothing to do with the question of priority of *liens,* which it asserts is the question here, but goes only to the question whether there is a necessary contractual assent of the *owner* to the doing of a thing for which the lien attaches. This argument as to priority of liens merely resurrects the former uncertainty attaching to the nature of the lien conferred upon the city by the statute. In reply to the argument, we say, as we have already intimated, that the statute did not create a *lien* whose priority, as compared with that of other liens of a similar kind or character, is to be determined. The statute created a positive *right,* which the lien of a subsequently existing mortgage does not in any wise interfere with or supersede.

Respondent in its brief suggests, but does not discuss, the question of the unconstitutionality of the amending act of 1933. The suggestion is apparently based on Art. I, § 23, of the constitution relating to the impairing of contract obligations. What we have already said regarding the nature of the city's right, conferred upon it by the act of 1909, and the implied assent thereto by the mortgagee when it took the mortgage, seems to us to dispose of respondent's suggestion. The right having been conferred upon the city prior to the execution of the mortgage, and the mortgagee having impliedly assented thereto, there is no impairment of the obligations of the mortgage contract.

Reversed and remanded, with direction to the trial court to eliminate from its decree the provisions fore-

546

closing and barring the city of Tacoma of its right to refuse to furnish light and water to the premises therein described.

BEALS, C. J., MITCHELL, HOLCOMB, and BLAKE, JJ., concur.