[No. 25110.   Department Two.   December 6, 1934.]

ROBERT MORAN, *individually and as executor, Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

[1]Reported in 38 P. (2d) 391.

556

*A. C. Van Soelen* and *John A. Logan,* for appellant.
*Allen, Froude & Hilen,* for respondents.

STEINERT, J.—This is an action to enjoin the city of Seattle from cutting off the water supply from certain premises. From an adverse decree, the city has appealed.

The complaint contains the following allegations, stated in narrative form: Robert Moran and wife held a mortgage upon certain real estate in Seattle, upon which is located the Butler Hotel. Pursuant to foreclosure proceedings, the property was sold at sheriff's sale and purchased by the mortgagees on April 25, 1931. After the period of redemption had expired, a sheriff's deed was issued to the purchasers. Mrs. Moran died November 20, 1932, and Mr. Moran was thereafter appointed, and ever since has been, the executor to administer her estate.

While the property was in the possession of other persons as tenants, who were obligated to pay all water bills, charges for water service were allowed to accumulate, and on September 27, 1933, the monthly accumulations amounted to $1,203.80. No bills for such service were ever sent to the owners. On the date last mentioned, the city cut off the water supply from the premises. Thereupon, the plaintiffs, in order to obtain renewed service, paid the city the sum of $517, which was the amount of the charges for the months of May, June, July, August and September, 1933, leav-

ing a balance of $686.80 for preceding months still due and owing. Apparently, the city then turned on the water, but subsequently threatened to cut it off again unless the balance owing for the preceding period was paid forthwith. The city justified its threatened action under the authority of chapter 161, Laws of 1909, p. 617 (Rem. Rev. Stat., §§ 9471, 9472), as amended by chapter 135, Laws of 1933, p. 473, § 1, both of which acts will be referred to later herein.

In its answer, the city made no issue of the allegations of the complaint, but, by way of an affirmative defense, alleged that it owned and operated its water supply system in its proprietary capacity; that, on June 8, 1933, its water department had outstanding $8,637,000 of water extension bonds, for the payment of which, with interest, the entire gross revenues of the water system had been pledged; that by virtue of Rem. Rev. Stat., § 9471, it had a lien for all delinquent and unpaid water rent, which constituted a part of the gross revenues of the water system, and to which the bondholders were entitled to look for security; and that, if plaintiffs were allowed to prevail, the contract between the city and its bondholders would be impaired.

The reply denied that the city owned or operated the water system in its proprietary capacity, and alleged that such ownership and operation were in the city's governmental capacity. The reply also denied the allegations of the answer respecting the effect of the lien statute and the impairment of the rights of the bondholders.

Upon the issues so framed, the city moved for a judgment, in its favor, on the pleadings. That motion was denied. Thereupon, plaintiffs, in turn, moved for judgment, in their favor, on the pleadings. That motion was granted, and a decree was entered adjudging

that the city had no lien against the premises, and permanently enjoining it from shutting off the water supply for failure to pay the delinquent charges then remaining unpaid.

This appeal involves, primarily, the construction of Rem. Rev. Stat., § 9471, as amended by chapter 135, Laws of 1933, p. 473, § 1.

In 1909, the legislature passed an act which, according to its title, granted to cities owning waterworks, electric light or power plants, a lien for delinquent charges. The act appears as Rem. Rev. Stat., §§ 9471 and 9472, which read, in part, as follows:

"Cities owning their own waterworks, electric light or power plant, are hereby granted a lien for delinquent and unpaid charges for water or electric light or power, against the premises to which the same has been furnished." Rem. Rev. Stat., § 9471.

"Said lien may be enforced by cities only by cutting off water or electric light or power against the premises to which the same has been furnished after the charges become delinquent and unpaid, until such charges are paid." Rem. Rev. Stat., § 9472 [P. C. § 1226].

In 1933 (Laws of 1933, p. 473, § 1), the legislature amended § 9471 to read thus:

"Cities owning their own waterworks, electric light or power plants, are hereby granted a lien for delinquent and unpaid charges for water or electric light or power, against the premises to which the same has been furnished: . . . *Provided further, That such liens shall not be for more than four months' charges due or to become due, nor for any charges which have been due for more than four months.*" (Italics ours.) Rem. 1934 Sup., § 9471 [P. C. § 1225]. .

The amending act became effective at midnight of June 7, 1933. We are here particularly concerned with the italicized portion of the 1933 act.

Several questions are presented for our decision. The first one is whether the four months' limitation prescribed by the 1933 act extends to charges which became due prior to the effective date of the act, or whether it applies only to such charges as became, or shall become, due after the effective date of the act. The city contends that the legislature did not intend to apply the act retroactively, and further, that, if the act be so applied, it is invalid as impairing the obligations of the city's contracts with its users and bondholders. Respondents make additional contentions which will be referred to later.

Before taking up the city's contentions, however, we shall advert momentarily to the case of *Metropolitan Life Ins. Co. v. Hansen, ante* p. 537, 38 P. (2d) 387, just recently decided. In that case, we had occasion to inquire into and explicate the meaning and import of the act of 1909 (Rem. Rev. Stat., §§ 9471, 9472). We there concluded that the act did not create a lien in the technical or usual sense of that term, but rather conferred upon the city the positive right to cut off the water or light service, in accordance with rules and regulations considered and found to be reasonable, and adopted to promote the collection of its bills. It was there held that the lien of a mortgage which antedated the rendition of the particular service by the city did not take precedence over the right of the city to cut off the water and light supply for delinquent charges, until such charges were paid.

Here, we have an additional question, namely, whether the city, even though it had the right, under the 1909 act, to shut off the water, is, by the 1933 act, now limited in the exercise of its right to such charges as have accrued within the four months' period next preceding the time of the shut-off, regardless of the time when such charges became delinquent.

It is well settled in this state, as elsewhere, that, if the language of a statute be doubtful, or if the legislative intent does not clearly appear therefrom, the courts will not give the statute a retroactive effect when to do so would impair existing rights. In the absence of such expression of intent, the statute will be construed as operating prospectively only. *In re Heilbron's Estate,* 14 Wash. 536, 45 Pac. 153, 35 L. R. A. 602; *Bruenn v. North Yakima School Dist. No. 7,* 101 Wash. 374, 172 Pac. 569; *Horner v. Pierce County,* 111 Wash. 386, 191 Pac. 396, 14 A. L. R. 707; *State v. Natsuhara,* 136 Wash. 437, 240 Pac. 557; *Tonkoff v. Roche Fruit & Produce Co.,* 137 Wash. 148, 242 Pac. 3; *Sterrett v. White Pine Sash Co.,* 176 Wash. 663, 30 P. (2d) 665; *Chew Heong v. United States,* 112 U. S. 536, 5 S. Ct. 255, 28 L. Ed. 770; 2 Sutherland on Statutory Construction (2d Ed.), § 464.

Respondents insist that, by using the words "nor for any charges which have been due for more than four months," appearing in the proviso at the end of the 1933 act, the legislature plainly and indubitably manifested its intention to limit the city's lien to charges for four months, regardless of the time when the service may have been furnished. The city, on the contrary, just as strongly contends that it is clear from the language of the statute, or at least that it is susceptible of the construction, that the act was not intended to operate retroactively, but was to be prospective in its effect.

We think that there is reasonable ground for a genuine difference of opinion on the question. It may, with reason, be argued that, since the act speaks as of the time of its effective date, it must have reference to all charges that have been delinquent for four months, whether such delinquency occurred before or after the effective date of the act; further, that the

act was intended to relieve, at once, the manifest injustice of requiring one person to pay another's debts. On the other hand, it may, with equal reason, be argued that the legislature did not intend by the act to inflict an irremediable loss summarily upon the city by depriving it of a positive right on which it had previously relied in extending credit, but that the legislature merely intended to put the city on notice that credit extended by it, in the future, for a longer period than four months would be at its own peril.

It may be observed, in passing, that, whatever injustice may have resulted from the harshness of the former statute and from the practice followed by the city of allowing charges to accumulate, that injustice was just as manifest and as acute on March 17, 1933, when the act was finally passed, as it was on June 7, 1933, when the act became effective. Yet the act contained no emergency clause, and hence, it did not become immediately effective.

It seems to us that, if the amending act is to operate retrospectively, it would impair a right which had been definitely fixed by grant of the statute and affirmative acceptance on the part of the city. We have already held that, under the old statute, the city had a positive right to shut off its water and light for all delinquent charges, and to keep them shut off until such charges were paid, and that regulations adopted by the city to enforce collection of such charges were reasonable. *McCormacks, Inc. v. Tacoma,* 170 Wash. 103, 15 P. (2d) 688; *Metropolitan Life Ins. Co. v. Hansen, ante* p. 537, 38 P. (2d) 387.

Relying upon that right, the city had, in this instance, extended credit to the consumer over a considerable period. Even if we can not judicially know the fact, it is at least a fair presumption to say that, in extending such credit, the city was not acting inatten-

tively or unconcernedly of its business, but rather in accommodation, for the time being, of the owners and users of properties dependent for their continued operation on the supply of water and light. Having earned and justified its right under the statute, the city should not now be deprived of the benefit of the act and assume a loss which, under the law, was the risk or hazard imposed upon others, even though the latter might in many instances be regarded somewhat in the light of innocent persons. Under these considerations, we are impelled to believe and conclude that the act of 1933 must be construed as operating prospectively and not retroactively, and that the four-months' limitation does not apply to charges that became delinquent prior to June 7, 1933.

Having disposed of the contentions made by the city, it becomes necessary to take up the alternative contentions advanced by respondents. It is first contended that the acts of 1909 and 1933 are both unconstitutional. Respondents concede that, so far as the state constitution is concerned, the question is no longer an open one. *McCormacks, Inc. v. Tacoma,* 170 Wash. 103, 15 P. (2d) 688; *Tacoma v. Young,* 170 Wash. 385, 16 P. (2d) 617. We need not add anything here to what was said in those cases upon that phase of the contention.

Respondents, however, argue that the question is still an open one so far as the Federal constitution is concerned. Reliance is chiefly placed upon the equal-protection clause of the fourteenth amendment, respondents contending that the statute discriminates in favor of municipally owned utilities and against such utilities as are privately owned.

It is true, of course, that the mere fact of classification does not, of itself, relieve a statute of its encroachment upon the equal-protection clause of the four-

teenth amendment to the Federal constitution. There must, in truth, be some reasonable ground and basis of distinction to justify an attempted classification. *Gulf etc. Ry. Co. v. Ellis,* 165 U. S. 150, 17 S. Ct. 255, 41 L. Ed. 666. But classification and distinctions of treatment as between privately and municipally owned corporations have been repeatedly upheld upon the basis of the difference in the methods and purposes of conducting business. In *Springfield Gas & Electric Co. v. Springfield,* 257 U. S. 66, 42 S. Ct. 24, 66 L. Ed. 131, it was held that state legislation permitting cities owning electric plants to sell electricity to private consumers and fix rates by ordinance or resolution of the city council, but subjecting competing private companies to submit to regulations of rates by a public commission, did not deny private corporations equal protection of the law. Holding that differences of treatment resulted from differences in types of corporations, the court said:

"The private corporation, whatever its public duties, is organized for private ends and may be presumed to intend to make whatever profit the business will allow. The municipal corporation is allowed to go into the business only on the theory that thereby the public welfare will be subserved. So far as gain is an object it is a gain to a public body and must be used for public ends. Those who manage the work cannot lawfully make private profit their aim, as the plaintiff's directors not only may but must."

This court has recently held that, for the purposes of taxation, a classification distinguishing between private corporations and municipal corporations operating in a proprietary capacity was reasonable. *Puget Sound Power & Light Co. v. Seattle,* 172 Wash. 668, 21 P. (2d) 727, affirmed in 54 S. Ct. 542.

We are clearly of the opinion that the statutes in question do not offend the fourteenth amendment to

the Federal constitution. We have also held, just recently, that these statutes do not offend the provisions of either the state or the Federal constitution respecting the impairment of contract obligations. *Metropolitan Life Ins. Co. v. Hansen, ante* p. 537, 38 P. (2d) 387.

Respondents finally contend that the city has waived its lien or right by allowing the charges to accumulate and by failing to cut off the water supply at an earlier date. There is nothing in the record to indicate that the city made no effort to collect the water rentals from the tenants of the building, or that its failure to disconnect the service was due to dilatoriness or carelessness in the conduct of its business, and we can not assume that the city's conduct is to be thus explained. The record shows that, while the tenants did not keep their account paid up in full, from month to month, they did, from time to time, make substantial payments thereon. As we have already intimated, it is at least a reasonable presumption that the city was moved by fair and honest considerations and was doing only that which a private operator might have done under the same circumstances.

In *McCormacks, Inc. v. Tacoma, supra,* it was contended, as it is here, that the city had waived its right of lien, so far as the owner of the property was concerned, but the court decided the point adversely to the owner. A contention similar to that made by respondents here was also advanced in *Loring v. Commissioner of Public Works,* 264 Mass. 460, 163 N. E. 82, and in answer thereto, the court said:

"The default of the tenant did not relieve the real estate from the lien which had been imposed by the superior public authority for the preservation of the public health and safety. The fact that the tenant has become insolvent is the misfortune of the petitioners, but it does not affect the enforcement of a

right lawfully established for the public welfare. *Dunbar v. New York,* 251 U. S. 516, 518 [40 S. Ct. 250, 64 L. Ed. 384].

"Unreasonable delay in shutting off the water for nonpayment of the water bills is a factor irrelevant to the enforcement of the lien in conformity to the enabling statute. The Legislature has not imposed any such limitation upon the lien. It is not within our province to do so. *Fairbanks v. Mayor & Aldermen of Fitchburg,* 132 Mass. 42, 47, 48."

So, in this case, the legislature did not, until 1933, impose any limitation whatever upon the right of the city to shut off the service for delinquent charges. The limitation which the legislature did ultimately impose was one which, according to our previous construction herein, operated prospectively and not retrospectively. In our opinion, the city did not, through lapse of time, waive its right to shut off the water service from the premises.

We think that the court was in error in granting the injunction against the city. Reversed.

BEALS, C. J., MITCHELL, HOLCOMB, and BLAKE, JJ., concur.