[No. 39805.    Department Two.    October 30, 1969.]

UNION ENTERPRISE, INC., et al., Appellants, v. THE CITY OF SEATTLE, Respondent.*

*Williams, Lanza, Kastner & Gibbs, Joseph J. Lanza,* and *Peter E. Peterson,* for appellants.

*A. L. Newbould* and *Arthur T. Lane,* for respondent.

PER CURIAM.—The first paragraph of the appellants' brief states succinctly what this case is all about:

This action was commenced on November 18, 1966, with the service and filing of a Complaint in which it was alleged that the respondent, City of Seattle, on or about July 21, 1966 "wrongfully and negligently disconnected

*Reported in 460 P.2d 285.

all power to the vessel restaurant known as 'Surfside 9,' causing a shut-down in the electric pumps which were used to pump water from the bilge of the vessel, thereby, causing the vessel, together with the equipment and fixtures, to sink to the bottom of Lake Union where the same now lies in a partially submerged and permanently unusable condition."

We supplement this with the information that the appellants are the owners, and the lessees of the vessel-restaurant; that it was subleased to and operated by Four Winds Ship, Inc., which operated the restaurant (hereinafter referred to as the tenant) and owed the city of Seattle in excess of $400 when the power was disconnected. The department of the city of Seattle, whose actions are here under scrutiny, is familiarly known as City Light.

The action was dismissed by the superior court on a motion for summary judgment by the city. The facts deemed to be dispositive were: the operator of the restaurant (the tenant) was generally in arrears in the payment of electric bills, and on July 15, 1966 had been given until July 20 to pay the balance of $417.33 then due and owing to City Light; that though Seattle Ordinance No. 93180 provided that payment should be made at the office of the city treasurer, it was the custom of City Light employees sent to cut off electricity to accept payment of the amount past due and permit the service to continue; that the amount past due had not been paid when the linemen came to cut off the electricity to "Surfside 9" at about 2:20 p.m. on July 21; that no tender of the amount due was made to the linemen either before or after the electricity was cut off, though their presence for that purpose was obvious for 10 minutes before and 5 minutes after the actual "cut off."

The applicable law is likewise clear. City Light in this case acted under the authority of RCW 35.21.290 and RCW 35.21.300. The former gives cities and towns owning their own water works, or electric light or power plants a lien on the premises to which water, electric light and power services are furnished; the latter provides for its enforcement

"only by cutting off the service until the delinquent and unpaid charges are paid."

The state legislation was supplemented by § 13 of Seattle Ordinance No. 93180[1] which provided that if payments were not made at the office of the city treasurer within 10 days of the due date "the service may be shut off without notice." In this case, the amount owing was considerably more than 10 days past due.

On the basis of the agreed facts and the law, it seems to us that the trial court had no alternative but to enter the order dismissing the action.

Counsel for appellants make a series of engaging and appealing arguments, the essence thereof being that under the circumstances the actions of City Light were unconscionable.

■ However, the trial court was satisfied, as are we, that City Light made an entirely legal use of a "method, effective, inexorable and direct . . ." (to quote Judge Steinert in *Metropolitan Life Ins. Co. v. Hansen,* 179 Wash. 537, 543, 38 P.2d 387 (1934)). To again quote the opinion in that case: "The wisdom or policy of granting the right to invoke such remedy or method lies with the legislature . . ."

While we regard the "unconscionable" arguments as beside the point—there being nothing involved except the application of law to undisputed dispositive facts—it can be said on behalf of City Light that it was proceeding with the collection of an indubitably overdue electrical bill from an habitually delinquent customer. After notice that payment must be made by a day certain, there never was a tender of the amount past due.

The appellants seem to feel that there was some saving grace in their tenant having kept on hand for several days an amount sufficient to pay the past due bill. During that

---

[1]This ordinance was repealed by Ordinance No. 94906 (approved June 29, 1966; effective July 15, 1966), but the repeal specifically did not affect contracts entered into before the effective date except as to rates. The 10-day cut-off provision was retained and is now codified as § 2.64.280(1) of the Seattle Code.

period the city treasurer's office was open; the mails were operating; and there was even the opportunity of a last minute tender, after the electricity was cut off, that would have led to an immediate restoration of service.

We do not get into the discussion of what could have been done to minimize the damages, since those were matters for determination at a trial, if the appellants had a cause of action against the city. The trial court's determination on the basis of undisputed facts—that no payment or tender of the amount past due was made either before or immediately after the electricity was cut off—established that there was no basis for an action against the city, since it had only exercised its statutory right to cut off service until it had been paid.

For the answer to the claim that the owner of the premises should not be responsible for the delinquency of his tenant *see Moran v. Seattle,* 179 Wash. 555, 38 P.2d 391 (1934) and *McCormacks, Inc. v. Tacoma,* 170 Wash. 103, 15 P.2d 688 (1932).

The summary judgment of dismissal is affirmed.

---

January 7, 1970. Petition for rehearing denied.