[No. 33664-2-II.   Division Two.   June 14, 2006.]

SEATTLE MORTGAGE COMPANY, INC., *Respondent*, v. UNKNOWN
HEIRS OF DAISY GRAY ET AL., *Appellants*.

480

*Ward D. Groves, Assistant City Attorney*, for appellants.

*Jason Wilson-Aguilar* (of *Routh Crabtree Olsen, P.S.*), for respondent.

¶1 VAN DEREN, A.C.J. — City of Tacoma Public Utilities Department (Tacoma PUD) appeals the trial court's summary judgment order in favor of Seattle Mortgage Company. Tacoma PUD argues that (1) its lien against Daisy Gray's real property was not extinguished by Seattle Mortgage's foreclosure action following Gray's death and (2) the trial court erred in failing to recognize a constitutional, statutory, or equitable basis for Tacoma PUD to deny electrical services to the real property until its energy conservation improvement loan is repaid.

¶2 We affirm, holding that the trial court properly granted summary judgment to Seattle Mortgage as a matter of both law and equity.

## FACTS

¶3 In June 1999, Seattle Mortgage loaned Daisy Gray $135,000 in exchange for a promissory note and a deed of trust against her residence in Tacoma. Seattle Mortgage recorded the deed on June 28, 1999. The note and deed of trust contained an acceleration clause allowing Seattle Mortgage, in the event of default, to demand the entire outstanding balance of the debt.

¶4 In August 1999, Tacoma PUD loaned Gray $3,186.96 for energy conservation improvements to her home.[1] It was a low income, zero interest loan funded by Tacoma PUD ratepayers. Tacoma PUD secured the conservation loan with a lien on Gray's home and it executed a contract with Gray that provided that, in the event of default, Tacoma PUD could disconnect the electrical services to the home until the debt was satisfied. Gray's obligation to repay the loan arose only if she vacated the premises or converted to a different form of power. Default occurred if she failed to make payment within 90 days of either occurrence. The lien was recorded in Pierce County on October 15, 1999.

¶5 Gray died in October 2002 and payment on the Seattle Mortgage debt stopped on October 22, 2002. In July

---

[1] In addition, Tacoma PUD awarded Gray an $806.50 grant.

2004, Seattle Mortgage filed a complaint for foreclosure on Gray's home based on the unpaid balance of $85,315.38, plus interest and late charges. The total debt was $89,058.82. Seattle Mortgage named Tacoma PUD as a defendant in the foreclosure action.[2]

¶6 Tacoma PUD answered the complaint and claimed that its lien was not inferior or subordinate to Seattle Mortgage's interest. It maintained the right to refuse future utility services to the property until Gray's debt was paid. It asserted: "Plaintiff or other parties taking title to and/or possession of the subject Property are equitably estopped from obtaining future utility services thereto unless or until the charges associated with said municipal energy conservation loan are paid in full." Clerk's Papers (CP) at 48.

¶7 Seattle Mortgage moved for partial summary judgment against Tacoma PUD's claim, arguing that it had priority and that the purchaser at the foreclosure sale should take the property free and clear of Tacoma PUD's subordinate interest.

¶8 The trial court granted Seattle Mortgage's motion for partial summary judgment against Tacoma PUD. CP at 156. It held that (1) Seattle Mortgage's deed of trust had priority over Tacoma PUD's conservation lien, (2) foreclosure of Seattle Mortgage's deed would extinguish Tacoma PUD's lien, and (3) the purchaser at the foreclosure sale would take the property free and clear of Tacoma PUD's interest. Tacoma PUD moved for reconsideration, which the trial court denied.

¶9 In its oral decision on Tacoma PUD's motion for reconsideration, the trial court stated:

> [I]t's the equities that demand the results in this case. The City seeks to effectuate its proprietary interest and suggests they can do virtually anything to do that. They justify it under public policy and the theory being that this is for the good of everybody to promote energy efficiency, but what they are

---

[2] The other parties named in this appeal either disclaimed interest or did not appear.

really asking to do is to have the ability to tie up a piece of property and have that ability to tie up the piece of property survive death, survive foreclosure, survive anything that gets in the way of the City's action. . . . That's just too paternalistic and not equitable at all.

Report of Proceedings (July 17, 2005) at 12.

¶10 Tacoma PUD appeals.

## ANALYSIS

### A. Standard of Review

¶11 When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Grundy v. Thurston County*, 155 Wn.2d 1, 6, 117 P.3d 1089 (2005). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Grundy*, 155 Wn.2d at 6. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Lilly v. Lynch*, 88 Wn. App. 306, 312, 945 P.2d 727 (1997).

### B. Constitutional Authority

¶12 Tacoma PUD argues that (1) Seattle Mortgage erroneously argued to the trial court that Tacoma's lien on the property did not comply with article VIII, section 7 of the Washington State Constitution and (2) its lien is consistent with and mandated by the Washington State Constitution. Seattle Mortgage does not dispute that Tacoma PUD had the right to the lien but contends that the constitutional provisions do not grant Tacoma PUD's lien priority or super priority over prior recorded liens or security interests in the real property.

1. Article VIII

¶13  Tacoma PUD cites article VIII, sections 7 and 10 of Washington's Constitution as authority for its conservation loan program and its right to enforce its lien against Gray's property.

¶14  Article VIII, section 7 states:

> No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

Article VIII, section 10 states:

> Notwithstanding the provisions of section 7 of this Article, any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of water, energy, or stormwater or sewer services may, as *authorized by the legislature*, use public moneys or credit derived from operating revenues from the sale of water, energy, or stormwater or sewer services to *assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of water, energy*, or stormwater or sewer services in such structures or equipment. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same *shall be a lien against the structure* benefited or a *security interest in the equipment benefited*. Any financing for energy conservation authorized by this article shall only be used for conservation purposes in existing structures and shall not be used for any purpose which results in a conversion from one energy source to another.

(Emphasis added.)

■ ¶15  In *City of Tacoma v. Taxpayers of the City of Tacoma*, our Supreme Court upheld the constitutionality of conservation loan programs. 108 Wn.2d 679, 705, 743 P.2d 793 (1987) (holding loan programs constitutional because

the city received sufficient, bargained for consideration in the form of public benefit from electric conservation).

¶16 Further, article VIII, section 10 specifically authorizes Tacoma PUD to establish a lien against the structure or a security interest in the equipment for energy conservation purposes to ensure repayment. This provision entitles Tacoma PUD to traditional lien law protections. In the event of default, it can foreclose on the property or assert its rights in the equipment financed. Here, Tacoma PUD had a lien on Gray's real property and its legal remedy was foreclosure on that property.

¶17 Thus, we hold that article VIII authorized Tacoma PUD to grant Gray the conservation loan and establish a lien against her house in the event of default.

## 2. *Tacoma v. Taxpayers*

¶18 Tacoma PUD argues that the holding in *Taxpayers* does not preclude it from requiring repayment for energy conservation loans.[3] 108 Wn.2d 679. Again, we agree with Tacoma PUD.

¶19 In *Taxpayers*, the city of Tacoma sought to validate its energy conservation ordinance authorizing Tacoma PUD to finance such measures for privately owned property. 108 Wn.2d at 681. The city established the program to lessen its reliance on outside sources of power and to respond to environmental concerns, Native American treaty rights, and the lack of hydroelectric power sites. *Taxpayers*, 108 Wn.2d at 682. The ordinance authorized the city to use public funds to install energy conservation measures in private structures without requiring the citizens receiving the funds to repay the city. *Taxpayers*, 108 Wn.2d at 684.

¶20 Our Supreme Court held that the program was statutorily authorized and was constitutional because the

---

[3] Tacoma PUD makes this argument in response to a summary judgment argument Seattle Mortgage made at the trial court. On appeal, Seattle Mortgage does not argue that Tacoma PUD is precluded from collecting repayment but, rather, that *Taxpayers*, 108 Wn.2d 679, does not address repayment because it was decided before Tacoma PUD implemented a repayment component of its energy conservation program.

public received valid consideration and any benefit to the private individual was incidental to and in aid of the public benefit. *Taxpayers*, 108 Wn.2d at 705. It premised its holding on the fact that the city (1) received valid consideration in the form of electricity saved and (2) lacked any donative intent. *Taxpayers*, 108 Wn.2d at 703-05. The court did not discuss the propriety or priority of liens as part of the conservation program, nor whether the city had the right to require repayment.

¶21 Thus, we hold that *Taxpayers* does not preclude Tacoma PUD from seeking repayment under article VIII, section 10.

### 3. Prohibition on Gift of Public Funds

¶22 Tacoma PUD argues that the trial court erred when it "summarily rejected Tacoma's gift of public funds arguments; apparently finding no constitutional basis to support same." Br. of Appellant at 17-18. It argues that its policy of withholding service to a property is within the spirit and intent of article VIII, section 7.

¶23 Article VIII, section 7 prohibits public funds from being gifted for private use. But it makes an exception for the support of the poor or infirm. And *Taxpayers* clearly differentiated between an unconstitutional gift of public funds and Tacoma PUD's conservation program that received adequate consideration for ratepayers and also lacked donative intent. 108 Wn.2d at 703-05. Here, Tacoma PUD provided a low income, zero interest loan to Gray to enable her to conserve energy. As a result, she received the benefit of lower utility bills and Tacoma PUD saved electricity.

¶24 We agree that Tacoma PUD's repayment requirement is within the spirit of article VIII, section 7, but we hold that the provision does not mandate such repayment. Furthermore, Tacoma PUD's policy of refusing electrical service to the homeowner who contracted for the

loan may be an effective means of ensuring repayment.[4] But article VIII does not address whether Tacoma PUD can refuse electrical services to *subsequent* owners as an alternative to asserting its lien rights against the property in a foreclosure action.

¶25 Tacoma PUD also argues that *Taxpayers* requires that (1) it not have donative intent with its conservation home improvement program and (2) in order to show that it does not have a donative intent, it must require *borrowers* to repay the funds used to improve their homes. It argues that its refusal to provide utility service to the real property itself is a means of ensuring that the borrowers repay the loans. But this ignores the reality that *subsequent* purchasers of the real property are not the *borrowers*.

¶26 Furthermore, donative intent is only one factor in determining whether a municipality's ordinance complies with article VIII, section 7. But *Taxpayers* specifically held that the party challenging the constitutionality of the ordinance bears the burden of proving donative intent. 108 Wn.2d at 702. And in order to establish an improper donative intent, the challenger must show a grossly inadequate return. *Taxpayers*, 108 Wn.2d at 703. Furthermore, the court looked at donative intent only to determine the degree of scrutiny required for the " 'key factor' "—consideration received for the program. *Taxpayers*, 108 Wn.2d at 703 (quoting *Adams v. Univ. of Wash.*, 106 Wn.2d 312, 327, 722 P.2d 74 (1986)).

¶27 Thus, Tacoma PUD's reliance on *Taxpayers* to support its service lock on property until a conservation loan is repaid is misplaced. First, Seattle Mortgage is not challenging the constitutionality of or consideration for the loan. Second, *Taxpayers* specifically held that electricity saved through the City's conservation measures was not grossly inadequate consideration—the " 'key factor.' " *Taxpayers*, 108

---

[4] Tacoma PUD has the authority to contract with private citizens and thus could include a provision in the contract to condition power service on repayment of the conservation loan. *See Hite v. Pub. Util. Dist. No. 2 of Grant County*, 112 Wn.2d 456, 460, 772 P.2d 481 (1989).

Wn.2d at 703 (quoting *Adams*, 106 Wn.2d at 327). Thus, we conclude that even without repayment of Gray's loan, Tacoma PUD has demonstrated a lack of donative intent because it received the benefit of saved electricity with the conservation improvements made to Gray's home.

## C. Statutory Authority To Refuse Service

¶28 Tacoma PUD argues that (1) in addition to constitutional authority to provide conservation loans, statutory authority grants it the right to refuse service to coerce repayment of such loans and (2) traditional statutory lien priority laws do not apply. Seattle Mortgage argues that no statutory provision grants Tacoma PUD super priority and, thus, as the subordinate lien holder, Tacoma PUD's lien was extinguished upon foreclosure.

¶29 We construe statutes to ascertain and carry out the legislature's intent. *Arborwood Idaho, L.L.C. v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). If the statute's meaning is plain on its face, then we must give effect to that plain meaning. *Arborwood*, 151 Wn.2d at 367.

¶30 A public utility district is a municipal corporation under Washington statutory and constitutional law. *Sundquist Homes, Inc. v. Snohomish County Pub. Util. Dist. No. 1*, 140 Wn.2d 403, 410, 997 P.2d 915 (2000). And "'[m]unicipal authorities cannot exercise powers except those expressly granted, or those necessarily implied from granted powers.'" *Sundquist*, 140 Wn.2d at 410 (quoting *Pac. First Fed. Sav. & Loan Ass'n v. Pierce County*, 27 Wn.2d 347, 353, 178 P.2d 351 (1947)). We construe a municipal corporation's powers differently depending on whether the corporation is acting in a governmental or proprietary manner. *Hite v. Pub. Util. Dist. No. 2 of Grant County*, 112 Wn.2d 456, 459, 772 P.2d 481 (1989). In its proprietary mode, a municipal corporation acts much like a private enterprise and may exercise its business powers in the same way as a private individual or corporation. *Hite*, 112 Wn.2d at 459.

¶31 In the production and sale of power, a municipal corporation acts in a proprietary manner. *Hite*, 112 Wn.2d

at 459. And at oral argument, Tacoma PUD agreed that it acts in a proprietary manner in providing loans for home conservation purposes.

### 1. Express Statutory Authority

¶32 The Washington legislature has enacted several statutes dealing directly with a city's right to regulate public utilities. RCW 35.92.050, .360; RCW 35.21.290, .300(1). Tacoma PUD argues that RCW 35.92.050, RCW 35.92-.360, and its own municipal code expressly enable it to shut off power to Gray's premises, even after foreclosure, until the delinquent conservation loan is satisfied. TACOMA MUNICIPAL CODE (TMC) 12.06.115.

¶33 RCW 35.92.050 allows a city to regulate the use, distribution, and price of utilities:

> A city or town may also construct, condemn and purchase, purchase, acquire, add to, alter, maintain and operate works, plants, facilities for the purpose of furnishing the city or town and its inhabitants, and any other persons, with gas, electricity, and other means of power and facilities for lighting, including streetlights as an integral utility service incorporated within general rates, heating, fuel, and power purposes, public and private, *with full authority to regulate and control the use, distribution, and price thereof,* together with the right to handle and sell or lease, any meters, lamps, motors, transformers, and equipment or accessories of any kind, necessary and convenient for the use, distribution, and sale thereof; authorize the construction of such plant or plants by others for the same purpose, and purchase gas, electricity, or power from either within or without the city or town for its own use and for the purpose of selling to its inhabitants and to other persons doing business within the city or town and regulate and control the use and price thereof.

(Emphasis added.)

¶34 Under RCW 35.92.050, Tacoma may enact municipal rules regulating the use, distribution, and price of public utilities, which Tacoma has done in its municipal code. At issue here is TMC 12.06.115, which authorizes Tacoma

PUD to discontinue a customer's service when a customer defaults on a conservation loan agreement.

¶35 RCW 35.92.050 deals only with the provision of power; it does not expressly grant Tacoma PUD the right to grant energy conservation loans. But RCW 35.92.360 authorizes a city to finance energy conservation projects. It states in pertinent part:

> Any city or town engaged in the generation, sale, or distribution of energy is hereby authorized, within limits established by the Constitution of the state of Washington, to assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment, for compensation or otherwise, for the conservation or more efficient use of energy in such structures or equipment *pursuant to an energy conservation plan adopted by the city* or town if the cost per unit of energy saved or produced by the use of such materials and equipment is less than the cost per unit of energy produced by the next least costly new energy resource which the city or town could acquire to meet future demand. Any financing authorized under this chapter shall only be used for conservation purposes in existing structures, and such financing shall not be used for any purpose which results in a conversion from one energy source to another. . . . Except where otherwise authorized, such assistance shall be limited to:
>
> . . . .
>
> (4) Arranging or providing financing for the purchase and installation of approved conservation materials and equipment. Such materials and equipment shall be purchased from a private business and shall be installed by a private business or the owner.
>
> (5) *Pay back shall be in the form of incremental additions to the utility bill*, billed either together with use charge or separately. Loans shall not exceed one hundred twenty months in length.

RCW 35.92.360 (emphasis added).

¶36 Additionally, RCW 35.21.290 entitles a city to a lien against the premises to which "water, electric light, or power services were furnished for four months charges therefor[e] due or to become due, but not for any charges

more than four months past due." And RCW 35.21.300(1) requires that a city enforce the lien for the four months of charges by cutting off service until the delinquent charges are paid. These statutory provisions expressly govern a utility company's provision of power and allow shutting off utility services in the event of nonpayment for those services.

¶37 In short, the legislature has enacted laws enabling Tacoma PUD to (1) regulate the provision of power, (2) establish energy conservation programs, (3) provide assistance to customers to facilitate energy conservation programs (provided the city complies with the assistance limitations), (4) establish a lien for up to four months of unpaid utility charges, and (5) enforce the lien for four months' utility charges through a service shutoff.

¶38 These provisions do not, as Tacoma PUD asserts, expressly enable it to shut off power to a subsequent owner where the previous owner defaulted on a conservation loan. The statutes are silent as to whether, outside a contract, a city can shut off electricity for failure to repay a loan. Thus, we hold that Tacoma PUD does not have express statutory authority to refuse service to Gray's former premises after foreclosure of her interest in that property.

### 2. Implied Statutory Authority

¶39 Tacoma PUD argues that if we do not find express statutory authority for its service shutoff, then we should agree that it has implied statutory authority. It argues that the trial court erroneously granted summary judgment to Seattle Mortgage because the court did not find express statutory authority allowing Tacoma PUD to place conditions on its provision of power.

¶40 Tacoma PUD relies on our Supreme Court's decision in *Hite* to support its argument that a municipal corporation is not limited to express statutory powers. 112 Wn.2d at 458. The issue in *Hite* was whether a public utility district could enter into a contract that contained a lien provision. 112 Wn.2d at 458. The court found that a municipal corporation, acting in its proprietary function, had express authority to

contract and thus was not acting arbitrarily or capriciously when it inserted a lien provision into a contract to secure repayment of power start up costs. *Hite*, 112 Wn.2d at 463.

¶41 A municipal corporation may act with the express and implied powers the legislature grants. *Sundquist*, 140 Wn.2d at 410 (while acting in a proprietary capacity, the municipal corporation is implicitly allowed to make contracts and " 'to engage in any undertaking which is necessary to render the system efficient and beneficial to the public' ") (quoting *Hite*, 112 Wn.2d at 460); *see also HTK Mgmt., L.L.C. v. Seattle Popular Monorail Auth.*, 155 Wn.2d 612, 624, 627, 121 P.3d 1166 (2005) (where the legislature granted a municipal corporation the right to condemn private property, the court inferred from the authorizing statute that the municipal corporation had the implicit power to reasonably carry out its condemnation procedures).

¶42 Here, Tacoma PUD argues that it implicitly had authority to withhold electrical services for nonpayment of conservation loans because (1) RCW 35.92.050 authorizes it to regulate its provision of utilities and (2) under the constitution, *Taxpayers*, and RCW 35.92.360, it had authority to implement a conservation program.

¶43 But these statutes contemplate only the provision of power and not loans. The customer consumes power and if the customer does not pay her debt, the power company has nothing tangible to reclaim because the power is gone when it is consumed. Thus, the statutes allow the power company to stop providing further power until the utility debt is satisfied.

¶44 But a loan is a different mechanism. Acting as a lender, the power company may attach a lien to the property or contract with the homeowner to shut off power to the property in the event of loan default. But, as a lender, it is required to abide by lien and contract laws applicable to other lenders.

¶45 Furthermore, when the legislature granted the utilities the right to a lien, it limited a power company's recovery to four months' unpaid service.[5] RCW 35.21.290. This restriction on the power company's recovery prevents a subsequent owner of the premises from having to pay a previous owner's unlimited utility debts. But Tacoma PUD could and does lend sizable sums for conservation purposes, well in excess of any foreseeable four-month power bill. Here, it loaned Gray more than $3,000. Tacoma PUD argues that it need not recover its debt through traditional lien remedies because it may refuse power service to a subsequent owner until the debt is repaid. This is an unreasonable interpretation of the enabling statutes and the right to collect up to four months' unpaid utilities from subsequent owners.

¶46 Absent legislative direction, we refuse Tacoma PUD's invitation to extend to it an implicit right to refuse power service to Gray's former real property following foreclosure that extinguished her interest.

D. Bona Fide Purchaser

¶47 Tacoma PUD argues that Seattle Mortgage cannot assert the rights of a bona fide purchaser and that Seattle Mortgage, as Gray's successor in interest, is liable for Gray's debts.

¶48 Tacoma PUD points to case law and statutory provisions to support its argument that it may refuse service to Gray's former property. For example, our Supreme Court has held a successor in interest liable for its predecessor's unpaid utility bills. *Metro. Life Ins. Co. v. Hansen*, 179 Wash. 537, 540, 544, 38 P.2d 387 (1934). And RCW 35.21.290 allows a public utility to lien the premises for up to four months' unpaid utility charges. Finally, RCW 35.21.300 allows a utility to enforce its lien by cutting off services until the four-month delinquency is cured.

---

[5] *Metropolitan Life Insurance Co. v. Hansen* discusses the right to withhold utility services for up to four months' unpaid service as a lien, although it refers to the "lien" as a right to withhold power, consistent with our opinion here. 179 Wash. 537, 541, 38 P.2d 387 (1934).

¶49 But neither *Hansen* nor the statutory provisions deal with conservation loans. Thus, regardless of whether Seattle Mortgage is a bona fide purchaser, it is not liable for Gray's home conservation improvement debt.

E. Statutory Lien Priorities

¶50 Tacoma PUD argues that traditional statutory lien and recording priorities do not apply because it does not seek to enforce any title interest in the property but, rather, seeks to recover public funds by conditioning the provision of future electrical service to the property on repayment of Gray's loan. Seattle Mortgage argues that lien priority laws do apply to Tacoma PUD and because the legislature has not granted super priority to conservation loans, Tacoma PUD's lien was extinguished when Seattle Mortgage foreclosed and Tacoma PUD did not protect its interest by bidding at the sale.

¶51 RCW 60.04.061 governs the priority of traditional liens:

> The claim of lien created by this chapter upon any lot or parcel of land shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded at the time of commencement of labor or professional services or first delivery of materials or equipment by the lien claimant.

¶52 Further, Washington's recording system was enacted to ensure that a deed recorded first in time was superior to any other conveyance, and " 'generally, liens take precedence in order of time, the first in time being the first in right.' "[6] *Bank of Am., N.A. v. Wells Fargo Bank, N.A.*, 126 Wn. App. 710, 714, 109 P.3d 863 (2005) (quoting *Hollenbeck v. City of Seattle*, 136 Wash. 508, 514, 240 P. 916 (1925)).

---

[6] While certain debt, like tax debt, does encumber a property regardless of foreclosure, the legislature specifically contemplated the tax liens and granted super priority. *See* RCW 84.60.010. It has not granted super priority to conservation loan debt.

¶53 But in 1934, our Supreme Court held in *Hansen* that the utility company's property "lien" was superior to the rights of a mortgagee. 179 Wash. at 544. *Hansen* involved a foreclosure action seeking to compel the city of Tacoma to furnish water and electricity services to premises that had an outstanding debt for unpaid utility bills. 179 Wash. at 538. The court clarified that the utility "lien" was not actually a lien, but was a right, and that the power company could shut off power for unpaid utility bills and it could refuse power service to subsequent owners of the premises. *Hansen*, 179 Wash. at 544. The court noted that its ruling could be viewed as somewhat harsh, but because the power company was limited to four months' unpaid power, the legislature had established a check on the power company's right to recovery, making the court's ruling just. *Hansen*, 179 Wash. at 541.

¶54 *Hansen* is readily distinguishable because the utility lien in *Hansen* was a statutory lien originating from default on payment for consumed utilities. It was not, as it is argued here, enforceable due to a default on a conservation loan. The enabling legislation expressly grants a city the authority to regulate its provision of power, but it does not expressly allow a city to shut off power for a loan default. And whereas there is a check on the utility's power to prevent it from collecting more than four months' unpaid utilities in RCW 35.21.290 and .300, here, there is no limit on the loan amounts Tacoma PUD could seek to recover from a subsequent property owner.

¶55 Further, when acting as a lender, Tacoma PUD was not acting solely as a utility service provider and thus it cannot extend the benefits the legislature bestowed on it as a utility service provider to itself in the lender role. When lending money for home improvements, Tacoma PUD is held to the same rights of recovery as other lenders with a lien or a contract recovery right negotiated with the homeowner.

¶56 We apply traditional lien priority laws to Tacoma PUD's conservation loan and hold that its lien rights were

extinguished at foreclosure because it did nothing to preserve its interest in the property.

## F. Equity and Public Policy

¶57 Tacoma PUD also argues that the trial court did not properly consider the equities and public policy implications in its summary judgment ruling in favor of Seattle Mortgage. It argues that Seattle Mortgage was unjustly enriched, entitling Tacoma PUD to equitable relief.

### 1. Legal Remedies

¶58 Tacoma PUD argues that it lacks other adequate remedies to recoup the loss of public funds and that shutting off the power is the most efficient manner to recapture those funds.

¶59 But we hold that Tacoma PUD did have adequate legal remedies. As a junior lienholder, Tacoma PUD could have foreclosed on Gray's home at the time of default, which was 90 days after Gray's death (Seattle Mortgage waited two years after Gray's death to foreclose). Or Tacoma PUD could have claimed a right in any surplus from Seattle Mortgage's foreclosure sale. These are the same rights afforded any junior lienholder.

¶60 We will not grant Tacoma PUD greater rights where neither case law nor statute provides for them.

### 2. Unjust Enrichment

¶61 Tacoma PUD argues that the summary judgment ruling in favor of Seattle Mortgage unjustly enriched Seattle Mortgage because Seattle Mortgage received the benefit of Gray's loan without having to pay for it.[7] Seattle Mortgage counters that it was not unjustly enriched because it was not aware of Gray's loan at the time she received it and any benefit to the property as a result of the

---

[7] Tacoma PUD points to the fact that, ultimately, Seattle Mortgage was the purchaser at foreclosure and, as such, it obtained the benefit of the conservation loan. This fact, however, is irrelevant because the sale occurred subsequent to the court's summary judgment ruling.

loan was not substantial in relation to the overall property value.

¶62 A party must make restitution where it has been unjustly enriched at the expense of another. *Town Concrete Pipe of Wash., Inc. v. Redford*, 43 Wn. App. 493, 499, 717 P.2d 1384 (1986). But benefit or enhancement in value alone is not enough to require restitution, and liability attaches only when the circumstances of the benefit would make it unjust to keep it. *Town Concrete Pipe*, 43 Wn. App. at 499. The facts and circumstances surrounding the benefit must be such to require restitution in order to prevent injustice. *Town Concrete Pipe*, 43 Wn. App. at 500.

¶63 In *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, we held that recovery was proper under a theory of unjust enrichment even though a lien was properly dismissed. 33 Wn. App. 190, 193-95, 653 P.2d 1331 (1982). The case arose out of a real estate development plan that had "gone awry." *Irwin*, 33 Wn. App. at 192. Three companies contracted loans together to build a shopping center on a 7-acre tract of land and a water system on an adjacent 172-acre tract of land. The same lender financed both projects. *Irwin*, 33 Wn. App. at 192. When the owner of the larger tract of land defaulted on its loan, the lender began foreclosure proceedings. *Irwin*, 33 Wn. App. at 192. The shopping mall developer continued to hire subcontractors to complete the water system. *Irwin*, 33 Wn. App. at 192. The lender purchased the water system tract of land at the foreclosure sale. *Irwin*, 33 Wn. App. at 193. The subcontractors filed liens on both tracts. *Irwin*, 33 Wn. App. at 193. The trial court dismissed the liens but found that the lender, and now owner of the water tract, was unjustly enriched and thus restitution was required. *Irwin*, 33 Wn. App. at 193.

¶64 In upholding the trial court's unjust enrichment ruling, we held that the lender/owner received a substantial benefit from the subcontractors' work because the water system and the shopping mall were completed. *Irwin*, 33 Wn. App. at 194. Further, we held that the lender/owner knew that the subcontractors continued to develop the tract

and "silently acquiesced" as it instituted its foreclosure proceedings. *Irwin*, 33 Wn. App. at 194.

¶65 Here Seattle Mortgage, as the foreclosing creditor, may have achieved some benefit from Gray's conservation loan. But as Seattle Mortgage correctly points out, any increase in value was nominal in comparison to the overall value of the home. Tacoma PUD has not shown that Seattle Mortgage received a substantial benefit. Furthermore, an increase in value alone is insufficient to require restitution. *See Town Concrete Pipe*, 43 Wn. App. at 499.

¶66 Additionally, Seattle Mortgage asserts that Tacoma PUD did not notify Seattle Mortgage about the conservation loan (other than filing the lien). And Seattle Mortgage was unaware of the loan. Thus, unlike the defendant in *Irwin*, Seattle Mortgage did not "silently acquiesce[ ]" to the improvements and then seek to benefit from them without paying. 33 Wn. App. at 194.

¶67 The trial court did not err in refusing Tacoma PUD's unjust enrichment claim.

3. Equitable Remedy

¶68 Tacoma PUD argues that if we do not find that Tacoma PUD is entitled to its service refusal policy under statutory and constitutional authority, then it should grant relief as a matter of equity. It argues that Seattle Mortgage received a windfall in the form of increased value to the property as a result of the conservation loan.

¶69 Equitable relief is available where there is no adequate remedy of law. *Town Concrete Pipe*, 43 Wn. App. at 498. The court will create a lien in equity where there is no valid lien at law but such a lien is needed to prevent injustice. *N. Commercial Co. v. E.J. Hermann Co.*, 22 Wn. App. 963, 968 n.2, 593 P.2d 1332 (1979). Tacoma PUD points to case law where the court created a lien in equity where no valid lien existed.[8]

---

[8] Tacoma PUD cites to three different cases to support its argument that the trial court can create a lien in equity, but Tacoma PUD admits that those cases can

¶70 There are instances where justice requires an equitable lien. For example, in *Northern Commercial*, we held that an execution sale did not affect a former wife's lien interest in a property because the divorce decree granted her an equitable lien in the property. 22 Wn. App. at 965-67. The case arose from a divorce decree where the court secured the wife's property settlement, which the husband was to pay in monthly installments, by granting her an equitable lien in a piece of the husband's property. *N. Commercial*, 22 Wn. App. at 965-66. Subsequently, one of the husband's creditors brought an action against him on the property, but the creditor did not give notice to the wife. The creditor executed on the property and still did not provide notice to the wife. *N. Commercial*, 22 Wn. App. at 966. The trial court found, and we affirmed, that the wife's lien survived the sale because she had not received notice from the creditor. *N. Commercial*, 22 Wn. App. at 967. We reasoned that the lien arose from a divorce decree, and without enforcing an equitable lien under these circumstances, creditors could deprive the wife of her interest in the community property. *N. Commercial*, 22 Wn. App. at 968.

¶71 But *Northern Commercial* is inapposite here. There we sought to prevent injustice by recognizing a former wife's interest in community property where the wife had no notice of an impending sale. Further, we based our decision on case law allowing courts to impose equitable liens in divorce decrees. *N. Commercial*, 22 Wn. App. at 967. Here, Seattle Mortgage named Tacoma PUD in the foreclosure action and Tacoma PUD had notice of the sale. Further, the lien did not originate from a divorce decree and Tacoma PUD is not a spouse seeking to maintain an interest in community property.

¶72 Furthermore, justice does not require that we create an equitable lien in Tacoma PUD's favor. Tacoma PUD had

be distinguished on the facts: *Park Ave. Condo. Owner's Ass'n v. Buchan Devs., L.L.C.*, 117 Wn. App. 369, 386, 71 P.3d 692 (2003); *Aker Verdal A/S v. Neil F. Lampson, Inc.*, 65 Wn. App. 177, 188, 828 P.2d 610 (1992); *N. Commercial*, 22 Wn. App. at 968.

a valid lien in Gray's property and chose not to pursue relief using its lien rights. An equitable lien is not necessary to prevent injustice in this case.

## G. Equitable Basis of Summary Judgment

¶73 Tacoma PUD argues that the trial court erroneously based its decision to grant summary judgment in favor of Seattle Mortgage as a matter of equity rather than a matter of law. It cites to the trial court's oral ruling on Tacoma PUD's motion for reconsideration where it stated that the equities demanded summary judgment in favor of Seattle Mortgage.

¶74 The trial court initially granted summary judgment to Seattle Mortgage, finding that traditional lien laws gave Seattle Mortgage priority and that Tacoma PUD's lien was extinguished in foreclosure. The court found that Tacoma PUD was attempting to establish super priority without legislative authorization. It granted summary judgment as a matter of law, as reflected in its written order and oral ruling.

¶75 But in Tacoma PUD's motion for reconsideration, it argued that substantial justice required the trial court to consider Tacoma PUD's equitable arguments. The trial court responded to those arguments in its oral ruling, having already ruled as a matter of law in favor of Seattle Mortgage.

¶76 The trial court properly based its summary judgment decision on the law and addressed equity only at Tacoma PUD's request. Tacoma PUD cannot now fault the trial court for addressing those issues.

## H. Tacoma PUD's Exercise of Authority

¶77 Finally, Tacoma PUD argues that the trial court erroneously denied reconsideration of its summary judgment ruling because it believed that Tacoma PUD sought unlimited power to operate its utility and conservation program. Tacoma PUD argues that its program is consis-

tent with constitutional authority,[9] RCW 35.92.050,[10] and that it did not act arbitrarily or capriciously or unreasonably. We have already concluded that Tacoma PUD's conservation program, its imposition of repayment liens, and its negotiated contract right to refuse service to the borrower's property are permissible under the Washington Constitution and statutory authority. But its service refusal policy to a subsequent purchaser of the property is not consistent with either constitutional or statutory authority. We do not address whether Tacoma PUD acted arbitrarily, capriciously, or unreasonably because (1) the trial court did not conclude that its conduct was arbitrary, capricious, or unreasonable and (2) Seattle Mortgage does not raise any such issue on appeal.

¶78 To summarize, neither constitutional nor statutory authority expressly or implicitly enables Tacoma PUD to enforce its service refusal policy against Gray's real property following foreclosure by Seattle Mortgage, the senior lienholder. Because Tacoma PUD was acting as a lender, we hold that traditional lien and priority laws extinguished Tacoma PUD's junior lien when it did not act to protect its lien position in Seattle Mortgage's foreclosure action on the property. Further, equitable principles did not preclude summary judgment in favor of Seattle Mortgage because (1) Tacoma PUD had adequate legal remedies, (2) Seattle Mortgage was not unjustly enriched, and (3) justice did not impose an equitable lien in Tacoma PUD's favor.

¶79 Finally, the trial court did not err in granting summary judgment as a matter of law and in addressing Tacoma PUD's equitable arguments.

¶80 We affirm.

BRIDGEWATER and HUNT, JJ., concur.

---

[9] See above for discussion on constitutional authority.

[10] See above for discussion on RCW 35.92.050.