[No. 64498-0-I.   Division One.   April 18, 2011.]

ZERVAS GROUP ARCHITECTS, PS, *Respondent*, v. BAY VIEW TOWER LLC ET AL., *Defendants*, WHIDBEY ISLAND BANK, *Petitioner*.

*Gregory L. Ursich* (of *Inslee Best Doezie & Ryder PS*), for petitioner.

*Marie N. Gallagher* and *Steven P. Adelstein* (of *Adelstein Sharpe & Serka*), for respondent.

¶1 ELLINGTON, J. — This case involves the professional services lien statute. Zervas Group Architects PS provided services to a developer, which later obtained financing from Whidbey Island Bank (Bank). The Bank secured its loans with deeds of trust. The developer later defaulted on both obligations, and Zervas filed a lien for professional services and sought to foreclose. The trial court ruled that Zervas's lien had priority over the Bank's deeds of trust under RCW 60.04.061 and RCW 60.04.031(5).

¶2 Because the Bank had notice of the professional services, we agree and affirm.

## BACKGROUND

¶3 In August 2005, Zervas Group Architects commenced work for Bay View Tower LLC on a condominium tower

project in Bellingham. Zervas provided architectural, design, and geological services and authorized a geotechnical study, which was completed in November 2005.

¶4 Bay View subsequently sought to finance "soft costs," including preconstruction costs like architectural engineering, feasibility studies, surveys, and renderings, and approached the Bank seeking two loans, for $750,000 and $150,000. Bay View represented it had already paid $953,000 for soft costs. There was no discussion of services performed by Zervas.

¶5 A bank official physically inspected the property, observing there was no visible sign of construction activity. The Bank obtained subordination agreements from recorded lienholders, a preliminary commitment for title insurance confirming no other recorded liens existed, and two appraisals, both of which valued the property at $1,625,000. Without confirming that all Bay View's outstanding accounts were paid in full, the Bank made the loans to Bay View and recorded deeds of trust in April and August of 2006.

¶6 By November 2006, Bay View acknowledged an outstanding debt to Zervas of over $200,000. The parties agreed Zervas would continue work on the project while Bay View sought additional financing, and that Zervas would file a lien if not paid in full by mid-July 2007.

¶7 On July 31, 2007, Zervas filed its lien for professional services amounting to $269,309.20 and commenced a lien foreclosure action. The trial court ruled that Zervas's lien is prior to the Bank's two deeds of trust and granted partial summary judgment. We granted discretionary review.

## DISCUSSION

¶8 The question here is whether the Bank had notice of professional services under RCW 60.04.031(5), thus giving Zervas's lien priority.

¶9 We apply the usual standard of review for summary judgment.[1] Interpretation of a statute and its application to a particular set of facts are questions of law reviewed de novo.[2] If a statute's meaning is plain on its face, we follow that plain meaning.[3] The plain meaning of a statute is discerned from the ordinary meaning of the language, the context of the statute, related provisions, and the statutory scheme as a whole.[4] Statutes must be construed to give all the language effect.[5] If a statute is ambiguous, we employ various rules of statutory interpretation to find the legislature's intent.[6]

¶10 Ordinarily, an unrecorded interest in real property is subordinate to a recorded interest. Under the Washington recording act, chapter 65.08 RCW, an unrecorded conveyance is "void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor . . . of the same real property or any portion thereof whose conveyance is first duly recorded."[7] Thus, a bona fide lender's recorded security interest in

---

[1] Appellate courts review decisions on motions for summary judgment de novo. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is affirmed when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; CR 56(c). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. *Id.* The moving party has the burden to show that there is no genuine issue of material fact. *Id.* Once the moving party satisfies that burden, the nonmoving party must present evidence showing that material facts are in dispute. *Id.* Summary judgment is proper if the nonmoving party fails to do so. *Id.*

[2] *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010); *Spokane County v. Bates*, 96 Wn. App. 893, 896, 982 P.2d 642 (1999).

[3] *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

[4] *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 909, 154 P.3d 882 (2007) (quoting *Tingey v. Haisch*, 159 Wn.2d 652, 657, 152 P.3d 1020 (2007)).

[5] *Lake*, 169 Wn.2d at 526.

[6] *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996).

[7] RCW 65.08.070. Washington is a "race-notice" recording state. *See Dickson v. Kates*, 132 Wn. App. 724, 737, 133 P.3d 498 (2006).

property will generally take priority over unrecorded or subsequently recorded encumbrances.[8]

¶11 Mechanic's[9] and materialman's liens represent an exception to the recording requirement. A mechanic's lien cannot be recorded until the bill goes unpaid.[10] The legislature therefore provided that such liens relate back to the commencement of the services.[11] The "relation back" statute, RCW 60.04.061, provides:

> The claim of lien created by this chapter upon any lot or parcel of land shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded at the time of commencement of labor or professional services or first delivery of materials or equipment by the lien claimant.[12]

Professional service providers, including architects, are covered by this section.[13]

■ ¶12 Because professional services are often not discernible by physical inspection, the provider is permitted to file a formal, prelien notice:

> Every potential lien claimant providing professional services where . . . the professional services provided are not visible from an inspection of the real property may record . . . a notice. . . . If such notice is not recorded, the lien claimed shall be subordinate to the interest of any subsequent mortgagee . . . if the mortgagee . . . acts in good faith and for a valuable consideration acquires an interest in the property prior to the

---

[8] *See Seattle Mortg. Co. v. Unknown Heirs of Gray*, 133 Wn. App. 479, 495, 136 P.3d 776 (2006); *In re Trs. Sale of Real Prop. of Smith*, 93 Wn. App. 282, 288-89, 968 P.2d 904 (1998).

[9] A mechanic's lien secures payment for labor or materials supplied in improving property. BLACK'S LAW DICTIONARY 1008 (9th ed. 2009).

[10] *Haselwood v. Bremerton Ice Arena, Inc.*, 137 Wn. App. 872, 888, 155 P.3d 952 (2007), *aff'd*, 166 Wn.2d 489, 210 P.3d 308 (2009).

[11] *Id.*; *Mut. Sav. & Loan Ass'n v. Johnson*, 153 Wash. 41, 46, 279 P. 108 (1929).

[12] *See also* RCW 60.04.091 (notice of claim of lien must be filed within 90 days after professional services have ceased); RCW 60.04.021 (providing lien for amount of contract price of professional services).

[13] *See* RCW 60.04.011(13).

commencement of an improvement . . . without notice of the professional services being provided. The notice described in this subsection shall be substantially in the following form:

NOTICE OF FURNISHING PROFESSIONAL SERVICES[14]

The parties' arguments turn on the legislature's various uses of the term "notice" in this section.

¶13 It is undisputed that Zervas's services were not observable, and that Zervas did not file a prelien notice of furnishing professional services. Failure to record such a notice renders the professional services lien subordinate to a subsequent mortgage *so long as* the mortgagee acquires its interest "without notice of the professional services being provided."[15]

¶14 The Bank asserts "without notice" of services means without the formal prelien notice of furnishing professional services, so Zervas's claim cannot have priority because Zervas failed to record a prelien notice before the Bank recorded its deeds of trust.

¶15 The Bank points to *McAndrews Group Ltd. v. Ehmke*, the only Washington case that discusses the prelien notice under RCW 60.04.031(5).[16] But the *McAndrews* court expressly did not consider the "without notice" clause. *McAndrews* is thus not helpful in answering the question before us.[17]

¶16 The Bank also cites legislative bill reports indicating that recorded prelien notice will serve to provide lenders an opportunity to discover potential liens where physical inspection does not afford such a discovery.[18] This is certainly true but does not support the further contention that such

---

[14] RCW 60.04.031(5).

[15] *Id.*

[16] 121 Wn. App. 759, 90 P.3d 1123 (2004).

[17] *Id.* at 763-64 & n.5. Further, *McAndrews* indicates there were no other means of notice available. There is no mention of the lender's knowledge (or ignorance) of the pending project.

[18] FINAL B. REP. on Substitute S.B. 5497, 52d Leg., Reg. Sess. (Wash. 1991); H. B. REP. on Engrossed S.B. 6441, 52d Leg., Reg. Sess. (Wash. 1992). Useful

notice is a requirement for priority where the Bank has other reason to know of the services.

¶17 We disagree with the Bank's interpretation of the statute. First, read as the Bank proposes, RCW 60.04.031(5) would provide that when the prelien notice is not filed, the subsequent mortgagee has priority if it acquires the property without the prelien notice on file. This creates a nonsensical redundancy, which we doubt the legislature intended.

¶18 It is also improbable that the legislature, with its clear intent to protect the interests of professional service providers to the exclusion of mortgage liens, would intentionally create a loophole whereby a lender could ignore evidence of professional services.[19]

¶19 The plain meaning of the statute is that when a subsequent mortgagee has reason to know of the professional services, its lien is subordinate. Such is the case here. Indeed, the Bank admits it had actual notice that architectural services had been provided.[20] And at the time it recorded its deeds of trust, the Bank had ample information from which to deduce, through implication or inquiry, the existence of a potential professional services lien claimant, to wit, the architect on the project. The Bank knew the project was merely months away from obtaining construction permits, so that architectural services had to have been nearly complete.

¶20 The fact that Bay View did not disclose to the Bank that it was in arrears to Zervas does not figure in the analysis. The statute does not require that the lender have notice of the debt. Rather, it requires only that the lender have notice of the services.

¶21 The Bank had notice under RCW 60.04.031(5), and Zervas's lien relates back under RCW 60.04.061. There is no genuine issue of material fact.

---

legislative history may include bill reports. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 727, 153 P.3d 846 (2007).

[19] *See Mut. Sav.*, 153 Wash. at 46 (discussing former REM. COMP. STAT. § 1130).

[20] *See* Clerk's Papers at 47, 307-08.

¶22 Affirmed. Fees are awarded to Zervas as the prevailing lien claimant under RAP 18.1 and RCW 60.04.181(3).

GROSSE and LAU, JJ., concur.