# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

RYNELLE ANNE MINKLEY,

      Respondent/Cross Appellant,

v.

JAMES DONALD MINKLEY,

      Appellant/Cross Respondent.

DIVISION ONE

No. 83636-6-I

UNPUBLISHED OPINION

DWYER, J. — James Minkley challenges the superior court's distribution of property in the dissolution of his marriage to Rynelle Minkley. James asserts that the superior court erred by characterizing as community property two duplexes purchased by the parties during their marriage and a financial account that, he contends, contains proceeds from postseparation stock market trading. James additionally contends that, if the duplexes were properly characterized as community property, he is entitled to an equitable lien for his purported separate contribution. Finding no error, we affirm.

I

James and Rynelle Minkley were married on March 25, 2011 and became separated on November 18, 2019. On November 10, 2021, following a six-day trial, their marriage was dissolved. The parties have two children, who were seven and nine years old at the time of trial.

When the parties married, James owned a condominium on Mercer Island that he had purchased in 1993. The record indicates that, at the time of the parties' marriage, the condominium had equity of approximately $19,500, and James owed over $190,500 on the property. Although Rynelle had previously sold her own real property, she had other assets at the time, including savings, investments, and a Microsoft 401(k) plan.

Just prior to their marriage, Rynelle and James made an offer on a property in Sammamish where they intended to, and subsequently did, build their family residence. The purchase closed in June 2011, less than three months after the parties were married. They obtained the Sammamish property for $670,000 with a down payment of approximately $79,000. Rynelle paid approximately $37,000 from her premarital funds, including proceeds from the sale of Microsoft stock, toward the down payment.

The Mercer Island condominium became a rental property when Rynelle and James married and was consistently rented through the end of a lease term in June 2016. Evidence introduced at trial indicated that the monthly expenses for the condominium, including first and second mortgages and homeowner association dues, exceeded $1,850 during this time. James testified that the monthly rent received was initially $1,300 but was increased to $1,400. Thus, at the time, monthly expenses for the condominium exceeded the monthly income obtained therefrom. Rynelle testified that the expenses for the Mercer Island property were paid from a joint personal account. She further testified that the parties' finances, including those pertaining to the condominium, were "very

2

much" intermingled. According to Rynelle, James had made no attempt to segregate monies related to the Mercer Island property from the parties' other marital finances.

In 2014, James and Rynelle made a "joint decision to refinance the Mercer Island property into both of [their] names and . . . merge the first and the second loan so [they] could get a better interest rate and . . . have a more positive cash flow." The parties were listed on the refinanced loan as co-borrowers, and Rynelle's name was added to the title of the property. The refinance reduced the monthly mortgage payment to $900. According to James, the rental proceeds exceeded the costs of the condominium following the refinance. Rental payments were deposited into the parties' joint personal account.

In December 2016, Rynelle and James sold the Mercer Island condominium for $309,000, netting a profit of $115,000 from the sale. The parties engaged in a "1031 tax exchange," which enabled them to use the proceeds from the condominium sale to directly purchase other property without being subject to a capital gains tax. Thus, in March 2017, Rynelle and James purchased a duplex in Renton, referred to by the parties as the "Ferndale duplex." Two months later, in May 2017, they additionally purchased a duplex in Auburn.

James and Rynelle purchased the Ferndale duplex for $240,500, using proceeds from the condominium sale for a $61,403 down payment. The parties used their joint credit to finance approximately $171,000 of the purchase price, and they titled the duplex in both of their names as "community property."

3

Rynelle and James renovated the Ferndale duplex immediately after its purchase, financing the renovation with a home equity line of credit against their Sammamish home of approximately $35,000.

The parties purchased the Auburn duplex for $312,800. Financial documents indicate that the down payment was financed using approximately $53,000 from the condominium sale proceeds and approximately $29,000 from a joint account. James and Rynelle obtained a $234,000 loan to finance the remainder of the purchase price. The Auburn duplex, too, was titled in both of their names. Although James was listed as a co-borrower, the loan was based solely on Rynelle's income. The parties renovated the Auburn duplex using approximately $23,000 from joint accounts.

Two and a half years later, on November 20, 2019, Rynelle filed a petition for dissolution of the parties' marriage. A six-day trial commenced. James testified at trial that, because the proceeds of the Mercer Island condominium sale were used to finance down payments for the Ferndale and Auburn duplexes, he believed those properties to be entirely his separate property. He stated that he had "opened separate checking accounts . . . for each property" and, thus, that the funds were not commingled—an assertion disputed by Rynelle. James additionally testified regarding a TD Ameritrade account, referred to by the parties as the "New Life Financial #2187" account. According to James, the account was opened in August 2020, after the parties had separated. He testified at trial that the money in the account, totaling $41,943.37, was "money made in stock market trading" and "money that [he] borrowed on lines of credit."

4

In an oral ruling made on September 3, 2021, the superior court characterized as community property each of the three parcels of real property in question—the Sammamish family residence, the Ferndale duplex, and the Auburn duplex. The court ruled that the properties "in almost every way" had "the hallmarks of community property." Because their property was "so commingled," the court rejected both parties' assertions of a separate property interest in the real property—Rynelle's in the Sammamish home and James's in the Ferndale and Auburn duplexes.

On November 10, 2021, the superior court entered findings and conclusions consistent with its oral ruling. The court found that the Sammamish home and the Ferndale and Auburn duplexes were acquired during the parties' marriage. The court noted that "[b]oth parties claimed to have retained some or all of the property in the form of a separate interest." However, the court found that each parcel is properly characterized as community property, concluding that "[n]either party established that they used separate funds such that they could overcome the presumption that property acquired during the marriage is community property." The superior court also determined that the "New Life Financial #2187" account is community property. The court equally divided between the parties the property characterized as community, requiring an equalization payment of over $390,000 from Rynelle to James. The court found this property distribution to be "just and equitable" as required by law.

James thereafter filed a motion for reconsideration in which, among other assertions, he contended that the superior court erroneously characterized the

"New Life Financial #2187" account as community property. On reconsideration, James asserted a source for the funds in the account that was different from the source that he had described at trial; he contended that Rod Addicks, a prior business partner who had since died, had "funded the money to let him do trading." According to James's argument on reconsideration, the money in the account was "the money that he managed for Rod Addicks."

In response, Rynelle argued that James's assertion conflicted with a financial affidavit filed just before trial, in which James had stated that his only income resulted from spousal maintenance and rents from the parties' duplexes. Thus, Rynelle asserted that the source of the money in the purportedly separate account must have been from community funds. The superior court rejected James's contention that the "New Life Financial #2187" account was separate property, ruling that James had not established at trial that Rod Addicks had funded the account.

James appeals.[1]

II

James first contends that the superior court erroneously characterized the Ferndale and Auburn duplexes as community property. We disagree. The Ferndale and Auburn duplexes were acquired during Rynelle's and James's marriage. Accordingly, they are presumed to be community property. To rebut this presumption, James was required to demonstrate by clear and convincing

---

[1] Rynelle conditionally cross appeals, asserting that the superior court erroneously concluded that she has no separate property interest in the Sammamish family residence. Because we affirm the superior court's order, we need not address the conditional cross appeal.

6

evidence that the duplexes are instead his separate property. Because he failed to do so, the superior court properly characterized the duplexes as community property.

A trial court's characterization of property in a dissolution action presents a mixed question of law and fact. In re Marriage of Watanabe, 199 Wn.2d 342, 348, 506 P.3d 630 (2022). "Factual findings, including time of acquisition, method of acquisition, and intent of the donor, supporting the characterization are reviewed for substantial evidence." Watanabe, 199 Wn.2d at 348. Whether "a rebuttable presumption of community or separate character is overcome is a question of fact." In re Marriage of Schwarz, 192 Wn. App. 180, 192, 368 P.3d 173 (2016). "The characterization of property is reviewed de novo as a question of law." Watanabe, 199 Wn.2d at 348-49.

"The character of property, whether separate or community, is determined at the time of acquisition." Schwarz, 192 Wn. App. at 189. Property acquired during marriage is presumptively community property. Watanabe, 199 Wn.2d at 351. This is a true presumption, meaning that, "in the absence of evidence sufficient to rebut [the] presumption, the court must determine the character of property according to the weight of the presumption." In re Est. of Borghi, 167 Wn.2d 480, 484, 219 P.3d 932 (2009). A party may rebut the community property presumption "by offering clear and convincing evidence that the property was acquired with separate funds." Schwarz, 192 Wn. App. at 189. When property was previously characterized as separate property, "'[c]ommingling' of

separate and community funds may give rise to a presumption that all are community property." Schwarz, 192 Wn. App. at 190.

James asserts that the superior court erred by characterizing the Ferndale and Auburn duplexes as community property. This is so, he asserts, because the proceeds from the sale of the Mercer Island condominium, which he owned prior to the parties' marriage, were used to fund down payments for the duplexes.[2] Thus, according to James, Rynelle was required to overcome the separate property presumption in order for the duplexes to be properly characterized as community property. We disagree.

James misapprehends the matter before the superior court and, thus, mistakes the applicable legal presumption. He asserts that the superior court was required to apply the separate property presumption because he acquired the Mercer Island condominium prior to his marriage to Rynelle. Indeed, "presumptions play a significant role in determining the character of property as separate or community." Borghi, 167 Wn.2d at 483. "Once separate property is established, a presumption arises that such property remains separate property absent direct and positive evidence of intent to convert [it] to community property." Watanabe, 199 Wn.2d at 351. Notably, however, the superior court was not called upon to characterize the Mercer Island property, which was sold

---

[2] James's argument is premised on his contention that the Mercer Island condominium remained his separate property prior to its sale during the parties' marriage, which Rynelle disputes. However, as discussed herein, it is the characterization of the Ferndale and Auburn duplexes that is at issue. Thus, James has the burden of demonstrating that the duplexes, which were acquired during the parties' marriage, are not community property. He has not done so. The superior court did not err in determining that James had not rebutted the community property presumption, and the characterization of the Mercer Island condominium is not at issue.

prior to the dissolution of the parties' marriage. Rather, it is the characterization of the Ferndale and Auburn duplexes that is at issue. Thus, contrary to James's assertion, it is the community property presumption—not the separate property presumption—that applies to the characterization of the duplexes.

"[T]he character of property as separate or community property is determined at the date of acquisition." Borghi, 167 Wn.2d at 484. "Property *acquired* during marriage is presumptively community property. A party may rebut this presumption by offering clear and convincing evidence that the property was acquired with separate funds." Schwarz, 192 Wn. App. at 189. Rynelle and James acquired the Ferndale and Auburn duplexes during their marriage. Accordingly, the duplexes are presumed to be community property. Thus, to demonstrate that the duplexes should be characterized as his separate property, James was required to demonstrate by clear and convincing evidence that he acquired the properties with his separate funds. See Schwarz, 192 Wn. App. at 189. He did not do so.

James's assertion that the duplexes are his separate property because their purchase was funded by proceeds from the Mercer Island condominium sale is unavailing. The record indicates that the condominium sale proceeds funded $61,403 of the $240,500 purchase price of the Ferndale duplex and approximately $53,000 of the $312,800 purchase price of the Auburn duplex. Both Rynelle's testimony and financial documents entered into evidence indicate that the parties used joint assets to fund the majority of the purchase prices and renovation costs of the duplexes. Although James testified that the funds for the

9

duplexes were not commingled with the parties' joint assets, both Rynelle's testimony and financial documents submitted by the parties contradict that assertion. Significantly, the superior court found that, although James's testimony at trial was largely credible, some of his testimony relating to the parties' finances was not.

Because the Ferndale and Auburn duplexes were acquired during the parties' marriage, they are presumptively community property. Watanabe, 199 Wn.2d at 351. The superior court found that neither party had established that they used separate funds such that they could overcome that presumption. Whether a presumption regarding the characterization of property has been overcome is a factual question that we review for substantial evidence. Schwarz, 192 Wn. App. at 192. James provided no evidence to rebut the community property presumption other than his own testimony that the parties' finances were not commingled—testimony found by the superior court to be not entirely credible. Instead, the court found that the parties' property was extensively commingled.[3] Because James did not rebut the community property presumption, the superior court did not err by characterizing the Ferndale and Auburn duplexes as community property.

III

James next asserts that, if the duplexes were properly characterized as community property, he is entitled to a separate property lien in the amount that

---

[3] Substantial evidence, in the form of both Rynelle's testimony and financial documents entered into evidence, supports this finding.

was contributed toward the duplex purchases from the proceeds of the Mercer Island condominium sale. Again, we disagree. Such liens are an equitable remedy that may be granted within the trial court's discretion in order to prevent injustice. Here, the court found that equally dividing the parties' community property, requiring an equalization payment of over $390,000 from Rynelle to James, was a just and equitable property distribution. The court did not abuse its discretion by not additionally granting an equitable lien to James.

An equitable lien is a remedy employed either to carry out the intentions of the parties or to prevent injustice regardless of the parties' intent. Sorenson v. Pyeatt, 158 Wn.2d 523, 530 n.9, 146 P.3d 1172 (2006); see also Seattle Mortg. Co. v. Unknown Heirs of Gray, 133 Wn. App. 479, 499, 136 P.3d 776 (2006) ("The court will create a lien in equity where there is no valid lien at law but such a lien is needed to prevent injustice."). Such a lien "'will be enforced in equity against specific property, though there is no valid lien at law.'" Sorenson, 158 Wn.2d at 530 n.9 (quoting Henry L. McClintock, HANDBOOK OF THE PRINCIPLES OF EQUITY § 118, at 319 (2d ed.1948)). "In a dissolution proceeding, the trial court is required to 'do equity.'" In re Marriage of Miracle, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984). After "tak[ing] into account all the circumstances," the trial court "*may* impose an equitable lien to protect the reimbursement right when the circumstances require it." Miracle, 101 Wn.2d at 139. "We review the trial court's decision [whether to impose an equitable lien] only for abuse of discretion." Miracle, 101 Wn.2d at 139.

11

Here, James asserts that he "must be given" a separate property lien against the Ferndale and Auburn duplexes in the amount of the contribution toward the duplex purchases made from the proceeds of the condominium sale.[4] We disagree. After hearing six days of testimony and reviewing voluminous financial documents, the superior court found that all of the parties' real property had, "in almost every way," "the hallmarks of community property." The court determined that neither of the parties had established that they used separate funds such that they could overcome the community property presumption with regard to their real property. The court determined that it was just and equitable to divide the community property equally between the parties, which required an equalization payment from Rynelle to James of over $390,000.

Simply put, James has demonstrated no injustice warranting the grant of an equitable lien. Accordingly, the superior court was well within its discretion in declining to grant such a lien. We find no error.

IV

James additionally asserts that the superior court erred by characterizing the "New Life Financial #2187" account as community property. According to James, the account is his separate property because it was opened subsequent to the parties' separation. We disagree. Substantial evidence supports the superior court's finding that the source of the funds in the account was not established at trial. Accordingly, the court did not err by characterizing the "New Life Financial #2187" account as community property.

---

[4] Br. of Appellant at 32.

RCW 26.16.140 provides that "[w]hen spouses or domestic partners are living separate and apart, their respective earnings and accumulations shall be the separate property of each." Based on this statutory provision, James contends that the superior court erred by charactering the "New Life Financial #2187" account as community property. He asserts that this account was opened in August 2020, subsequent to the parties' November 2019 separation, and, thus, that it is his separate property. We disagree.

James provided conflicting explanations at trial and on reconsideration regarding the source of the funds in the account. At trial, he asserted that the funds in the account were "made in stock market trading" and "money that [he] borrowed on lines of credit." On reconsideration, James contended that Rod Addicks, a previous business partner who had since died, had "funded the money to let him do trading." The money in the account, James asserted on reconsideration, is "the money that he managed for Rod Addicks." Rynelle asserted that she was unaware of the account until after the issuance of a subpoena, as James had not revealed the existence of the account in discovery. She additionally argued that James's assertion conflicted with his financial affidavit filed shortly before trial, which indicated that his only income was from spousal maintenance and rents from the parties' duplexes. Thus, Rynelle asserted, the source of the funds in the account were obtained from community assets.

The superior court—which, significantly, is tasked with making both credibility determinations and findings of fact—found that the source of the funds

in the contested account had not been established at trial. Substantial evidence supports this finding. James provided inconsistent accounts regarding the source of the funds and brought to the superior court's attention no financial documentation to demonstrate that source. Thus, James failed to show that the funds in the "New Life Financial #2187" account were his "earnings and accumulations." See RCW 26.16.140. The superior court did not err by characterizing the account as community property. Nor did the court err by declining to recharacterize the account on reconsideration.

V

James requests an award of attorney fees on appeal pursuant to RCW 26.09.140, which authorizes such an award in a dissolution action "after considering the financial resources of both parties." He additionally requests that we "require Rynelle to pay [his] attorney fees and costs at trial."[5] James has neither demonstrated the requisite financial need nor presented meritorious legal arguments on appeal. Accordingly, we decline to grant the requested award.

In dissolution proceedings,

> [t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith . . . .
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

RCW 26.09.140. In determining whether a fee award is appropriate pursuant to

---

[5] Br. of Appellant at 36.

14

the statute, we consider both the parties' relative ability to pay and the arguable merit of the issues raised on appeal. In re Marriage of Leslie, 90 Wn. App. 796, 807, 954 P.2d 330 (1998) (granting an award of fees to wife when husband was in a "much better financial position" and wife presented meritorious legal arguments on appeal).

Here, the superior court found, in an unchallenged finding, that James "has had the ability to pay his own attorney fees throughout this proceeding." The court's findings and conclusions indicate that James was awarded over $1.3 million in the dissolution action. In addition, James's affidavit of financial need indicates that his monthly net income substantially exceeds his monthly household expenses. Significantly, James's claims of error on appeal are unmeritorious. For these reasons, we decline to grant the requested award.

Affirmed.

Dwyer, J.

WE CONCUR:

Chung, J.          Coburn, J.

15