**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| TRANG HUYNH NGUYEN,<br><br>     Respondent,<br><br>  v.<br><br>BECKY HOANG and NHAN HOANG,<br>husband and wife and their marital<br>community,<br><br>     Appellants. | No. 83978-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

  MANN, J. — Trang Nguyen sued Becky and Nhan Hoang for violating the

Mortgage Broker Practices Act (MBPA), chapter 19.146 RCW, and the Consumer

Protection Act (CPA), chapter 19.86 RCW; conversion; fraud; and constructive trust.

Following a bench trial, the trial court entered judgment for Nguyen on all claims and

awarded $341,612.74 in damages, $75,802.80 in attorney fees, and $4,821.31 in costs

for a total judgment of $422,236.85.  The Hoangs appeal and argue that the court erred

in: (1) determining the Hoangs were liable under the MBPA, (2) finding the Hoangs

liable under the CPA, (3) awarding attorney fees under the parties' joint venture

agreement, and (4) failing to segregate the attorney fees.  We remand for the trial court

to correct a $22.00 clerical error for the payment to attorney Douglas Owens.  We otherwise affirm.  We also award Nguyen her attorney fees on appeal.

I

A

Nguyen immigrated to the United States from Vietnam in August 2015.[1]  Nguyen speaks very little English and cannot read documents written in English.  She had an 11th grade education in Vietnam.

Nguyen met Hoang in nail school.[2]  Hoang learned that Nguyen was expecting a gift of $430,000 from her father in Vietnam and that Nguyen was interested in buying a home for her and her son.  Hoang told Nguyen that she was in the loan business and could help finance a loan.  She advised Nguyen to use just a portion of the funds for a down payment and finance the rest.  At the time, Hoang was licensed as a loan originator in Washington.[3]  On one or more occasions Nguyen met Hoang at Hoang's office and discussed acquiring and financing a home.  Nguyen believed that Hoang was acting in her role as a loan originator.

Nguyen found a home she was interested in buying in Lynnwood.  She showed the property to Hoang and told her she was interested in purchasing the home.  Hoang told Nguyen that she lacked sufficient credit to get a loan.  Hoang did not take an

---

[1] The facts are based on the trial court's unchallenged findings of fact.  Unchallenged findings are verities on appeal.  State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[2] This opinion refers to Becky Hoang by her last name and Nhan Hoang by his full name for clarity.

[3] In February 2021, Hoang's license was suspended for two years by the Washington State Department of Financial Institutions.  The charges state that "Respondent Hoang fails to meet the requirements of RCW 31.04.247(1)(e) by failing to demonstrate character and general fitness such as to command the confidence of the community and to warrant a belief that mortgage loan originator[s] will operate honestly, fairly, and efficiently with the purposes of the Act".

application or present Nguyen's request to a traditional residential lender. Hoang asked Nguyen to find a friend or relative who would cosign a loan. After Nguyen could not find a willing cosigner, Hoang volunteered her husband, Nhan Hoang, to be a cosigner.

The Lynnwood home was priced at $603,000. Nguyen withdrew $15,000 and transferred the money to the escrow company for the initial deposit. Nguyen then wire transferred $129,232.16 to the escrow company for the balance of funds needed to close the sale. At closing, NB Capital Assets was paid a loan origination fee of $4,824. The fee was not disclosed to Nguyen. NB Capital Assets is an alter ego of the Hoangs. NB Capital Assets was never licensed as a mortgage originator in Washington.

Hoang did not give Nguyen the purchase and sale documents for the Lynnwood home. Nor did Hoang disclose that Nhan Hoang was not a cosigner, but was the sole purchaser of the Lynnwood home. In November 2019, the Lynnwood home was transferred by statutory warranty deed to Nhan Hoang. The $15,000 down payment and $129,232.16 closing funds came from Nguyen for the property that was sold to Nhan Hoang. The balance of the purchase price was by a "hard money" loan for $482,400. The loan had an interest rate of 9.25 percent with monthly payments of $3,718.50 for interest only. The entire $482,400 principal matured on December 1, 2020.

After Nguyen moved into the Lynnwood home, Hoang presented her with a Lease and Option Agreement, and told Nguyen, for the first time, that she was not on the title to the property and that the house was owned by Nhan Hoang. The "rent" charged under the lease was $3,718.50, the same amount as the monthly interest due

on the loan. The proposed "option to purchase" was for one year at a price of $610,000. Nguyen required another $35,000 to exercise the option.

After closing, Nhan Hoang was added as another signer on one of Nguyen's bank accounts from which "rent" was paid. Most payments were made to the loan servicer. Nguyen made all of the $3,718.50 rent payments until this litigation was filed in September 2020. After that, the tendered rent was refused and Hoang told Nguyen that she and Nhan Hoang planned to sell the home and Nguyen had to move out.

B

In late 2019 or early 2020, Hoang proposed to Nguyen that she could earn enough from an investment property to enable her to buy the Lynnwood home. Hoang suggested Nguyen invest in a property in Everett. Hoang asked Nguyen to sign a joint venture agreement for the Everett property. The "venturers" were the Hoangs and two companies owned by the Hoangs. The agreement allocated 85 percent interest in the Hoang entities and 15 percent to Nguyen. The joint venture agreement stated that Nguyen owned a company named Azure Investments LLC. No such company existed.

In early February 2020, Hoang prepared a withdrawal slip from Nguyen's savings account at Chase Bank in the amount of $150,000 payable to Foster & Company. Hoang had Nguyen sign the withdrawal slip. Foster & Company is either an alter ego for the Hoangs or under their control through other entities. The Hoangs did not make an accounting for the $150,000 either before or after the purchase of the Everett property.

The purchase and sale agreement and loan for the Everett property were at first in Nhan Hoang's name. In late February 2020, the lender and escrow company were

instructed by one of the Hoangs to change the buyer to Nguyen. In February 2020, Hoang took Nguyen to the Tran Law Group, PS in Seattle to sign documents for the purchase of the Everett property. Hoang instructed Nguyen to sign the closing and loan documents and then stepped out of the room.

Although Nguyen had transferred $150,000 to Foster & Company, the down payment for the Everett property was only $74,174.71. Nguyen was not given an accounting for the remaining $75,825.29 of her funds.

One of the Hoangs arranged for a "hard money" loan from Intrust Funding for the Everett property. The Intrust loan was for $408,861.15 for a 5-month term, with an interest rate of 12 percent, with a possible 90-day extension for a 2 percent ($8,177.22) fee. Nguyen was the only borrower for the loan with no mention of a guarantor or any other person or entity responsible for the loan.

In late August 2020, Hoang signed an exclusive sale and listing agreement for the Everett property with Brier Realty. On September 17, 2020, Hoang signed a residential purchase and sale agreement for the sale of the Everett property for $567,500. All the documents for sale were signed by "Trang H. Nguyen by Becky Hoang as attorney in fact" or "as POA." Hoang did not have a power of attorney for Nguyen that would authorize her to sell real property in Nguyen's name. The attempted sale was done without Nguyen's awareness or consent. The sale was later terminated. Based on the joint venture agreement, the Hoangs, or their business entities, would have claimed 85 percent of the net proceeds leaving only 15 percent for Nguyen.

C

On February 18, 2020, Hoang asked Nguyen to provide a $56,000 loan to Nhung Nguyen, a friend of Hoang's who was involved in a real estate transaction in Renton and needed money to close the sale. Nguyen agreed based on her perceived friendship with Hoang. Accordingly, $56,000 was wired from Nguyen's bank account to Chicago Title Company. When the funds were transferred, Hoang represented to Nguyen that the loan would be repaid within a month. But Nguyen only received $36,000 and $20,000 was not repaid. Nhung Nguyen testified that she repaid the entire $56,000 to Hoang.

D

On February 5, 2020, Hoang made a $2,358.58 payment to attorney Douglas Owens using a debit card from Nguyen's bank account. Owens does not know Nguyen and has never done legal work for her. Owens testified that the payment was for an account receivable for other work he had done for Hoang and was unrelated to any of the other transactions.

E

In October 2020, Nguyen sued the Hoangs for fraud, conversion, quiet title, constructive trust, and violations of the MBPA and CPA. After a multiday bench trial, the trial court entered findings of fact, conclusions of law, and judgment for Nguyen. The court expressly found Nguyen's testimony credible, believable, and supported by documents in evidence. The court found Hoang's testimony not credible.

The trial court concluded that Nguyen provided clear, cogent, and convincing evidence supporting her claims for fraud over both the Lynnwood home and Everett

property transactions. The court found that Hoang's withdrawal of $150,000 for payment to Foster & Company, and retention of $20,000 from the loan to Nhung Nguyen supported Nguyen's claim for conversion. While the court found the joint venture agreement an adhesion contract, it also concluded that the Hoangs were liable for breach of their fiduciary duty. The court also found that Hoang's conduct violated the MBPA and that violation supported a violation of the CPA.

The trial court entered judgment against the Hoangs as follows:

| | |
|---|---|
| Down payment on the Lynnwood home: | $144,232.16 |
| Payment to Foster & Company: | $150,000.00 |
| Loan to Nhung Nguyen: | $20,000.00 |
| Payment to Douglas Owens: | $2,380.58[4] |
| Total: | $316,612.74 |

The court also awarded $25,000 as treble damages under the CPA,[5] as well as costs and attorney fees of $80,624.11, for a total judgment of $422,236.85.

The Hoangs appeal.

II

The Hoangs argue that the court erred in concluding that Hoang violated the MBPA because she did not qualify as a "loan originator," and the transactions with Nguyen did not affect the public interest. We disagree.

We review the interpretation of a statute de novo. Zervas Grp. Architects, P.S. v. Bay View Tower LLC, 161 Wn. App. 322, 325, 254 P.3d 895 (2011). "If a statute's meaning is plain on its face, then we must give effect to that plain meaning as an

---

[4] The parties do not dispute that the correct amount of the payment to Douglas Owens was $2,358.58. The trial court's judgment appears to include a clerical error. Nguyen agrees that we should remand for the trial court to correct the $22.00 clerical error.

[5] The CPA grants discretion to award treble damages for violations of the CPA up to $25,000. RCW 19.86.090.

expression of legislative intent." Nationscapital Mortg. Corp. v. State Dep't of Fin. Insts.,

133 Wn. App. 723, 736, 137 P.3d 78 (2006). A statute is ambiguous if it is susceptible

to more than one reasonable interpretation.

A

The MBPA prohibits loan originators, mortgage brokers, or other persons subject

to the act from taking certain actions, including:

> (1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person;
>
> (2) Directly or indirectly engage in any unfair or deceptive practice toward any person; or
>
> (3) Directly or indirectly obtain property by fraud or misrepresentation.

RCW 19.146.0201. The MBPA defines a loan originator as:

> An individual who for direct or indirect compensation or gain, or in the expectation of direct or indirect compensation or gain (i) takes a residential mortgage application, or (ii) offers or negotiates terms of a residential mortgage loan. "Loan originator" also includes a person who holds themselves out to the public as able to perform any of these activities.

RCW 19.146.010(11)(a).

While Hoang's license was later suspended, at the time of the transactions, she

was licensed as a loan originator in Washington State. She also received a loan

origination fee of $4,824, paid to NB Capital Assets, during the closing of the Lynnwood

home. Hoang informed Nguyen that she was "in the loan business," therefore, she

could help Nguyen finance her home. Hoang advised Nguyen by "discourag[ing]

[Nguyen] from purchasing a mobile home, and advis[ing] her to just use a portion of the

funds for a down payment and finance the balance." Nguyen met Hoang at her office to

discuss acquiring and financing a home, and Nguyen believed that Hoang was "acting

in her role as a loan originator." Similarly, Hoang advised Nguyen that she did not qualify for a loan without taking an application or presenting Nguyen with the option to request a traditional lender based on the large cash down payment Nguyen had available. Hoang confirmed that Nguyen met her at two offices that she worked at, the Freedom Mortgage Office and the Fairway Independent Mortgage Corporation Office. Hoang testified "I'm just a loan originator." Hoang meets the definition of a loan originator under the MBPA, and her actions violated RCW 19.146.0201(1)-(3). The trial court did not err in concluding that Hoang was a loan originator.

B

Relying on Behnke v. Ahrens, 172 Wn. App. 281, 285-87, 294 P.3d 729 (2012), and Burns v. McClinton, 135 Wn. App. 285, 290-91, 143 P.3d 630 (2006), Hoang argues that because her transactions with Nguyen were private and did not affect the public interest, there is no violation of the MBPA. But neither Behnke, nor Burns, address a violation of the MBPA.

In Behnke, a case involving the CPA, a lawyer breached his duty to disclose to his client his substantial business connection to the tax shelter operator he had recommended to the client. 172 Wn. App. at 285-87. The court affirmed the trial court's dismissal of the case, holding that no violation of the CPA had been shown because the record failed to demonstrate "a real and substantial potential for repetition." Behnke, 172 Wn. App. at 295-96. The court reasoned, "the concern of Washington courts has been to rule out those deceptive acts and practices that are unique to the relationship between plaintiff and defendant." Behnke, 172 Wn. App. at 292-93.

In <u>Burns</u>, another CPA case, the plaintiff recovered under the CPA based on his accountant's breach of contract and breach of fiduciary duty through having taken $2,500 monthly fees from the plaintiff's account, over which the plaintiff had given him "carte blanche," rather than the agreed upon $1,500. 135 Wn. App. at 290-91. The Court of Appeals reversed, citing the absence of any evidence that the defendant's other clients had been deceived and the lack of evidence that the defendant's deception was capable of being repeated with other clients. <u>Burns</u>, 135 Wn. App. at 290-91.

But Nguyen brought her claim under the MBPA. Hoang is correct that the CPA ordinarily requires the plaintiff in a private action to "establish that the act or practice is injurious to the public interest." RCW 19.86.093. The plain language of the MBPA, however, has no such requirement. Indeed, the MBPA declares that the brokering of residential loans substantially affects the public interest:

> The legislature finds and declares that the brokering of residential real estate loans substantially affects the public interest, requiring that all actions in mortgage brokering be actuated by good faith, and that mortgage brokers, designated brokers, loan originators, and other persons subject to this chapter abstain from deception, and practice honesty and equity in all matters relating to their profession. The practices of mortgage brokers and loan originators have had significant impact on the citizens of the state and the banking and real estate industries. It is the intent of the legislature to establish a state system of licensure in addition to rules of practice and conduct of mortgage brokers and loan originators to promote honesty and fair dealing with citizens and to preserve public confidence in the lending and real estate community.

RCW 19.146.005. The MPBA also declares that a violation of the act affects the public interest and is a per se violation of the CPA.

> The legislature finds that the practices governed by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW. Any violation of this chapter is not reasonable in relation to the development and preservation of business and is an unfair or deceptive act or practice and unfair method

of competition in the conduct of trade or commerce in violation of RCW 19.86.020. Remedies provided by chapter 19.86 RCW are cumulative and not exclusive.

RCW 19.146.100.

The trial court did not err in concluding that Hoang's actions violated the MBPA, and thus the CPA.

III

The Hoangs challenge the trial court's award of attorney fees, arguing that the trial court based its fee award on the joint venture agreement which limited attorney fees to arbitration. The Hoangs also argue that the trial court erred in failing to segregate the attorney fees award.

The record, however, reflects that Nguyen requested attorney fees under the CPA. Similarly, the trial court's written order awarded attorney fees and costs under the CPA. The court's written order does not mention attorney fees under the joint venture agreement.

There is nothing in the record showing that the Hoangs objected to an award of attorney fees under the CPA.[6] Nor did the Hoangs object to Nguyen's motion for attorney fees or request that the attorney fees be segregated. Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). We decline to reach the Hoangs' challenge to the award of attorney fees.

---

[6] In their reply brief, the Hoangs assert that they did object to attorney fees during oral argument before the trial court. The Hoangs' objection, however, was to an award of attorney fees under the joint venture agreement. There is no discussion of the CPA.

-11-

IV

Nguyen argues that because she prevailed, she is entitled to reasonable attorney fees for the costs incurred in defending this appeal. We agree.

A party prevailing on appeal is entitled to "recover attorney fees authorized by statute, equitable principles, or agreement between the parties." Thompson v. Lennox, 151 Wn. App. 479, 484, 212 P.3d 597 (2009). If the fees are recoverable at trial, they are also recoverable on appeal. Thompson, 151 Wn. App. at 484.

The trial court awarded reasonable attorney fees and costs as allowed under the CPA. RCW 19.86.090. Nguyen's appeal successfully defended the MBPA and CPA claim. Upon compliance with RAP 18.1, we award Nguyen reasonable attorney fees on appeal.

We remand for the trial court to correct the $22.00 clerical error for the payment to attorney Douglas Owens. We otherwise affirm.

_Mann, J._

WE CONCUR:

_Coburn, J._          _Brennan, J._